**MEUSER et, Plaintiffs, v. SMITH et, Defendants.**

Common Pleas Court, Franklin County.

No. 187447.   Decided January 14, 1955.

162

Barnhart & Wehr, for plaintiffs.
Griffith & Griffith, for defendants.

## OPINION

By LEACH, J.

Defendants are the owners of an 11 acre tract of land, situated in Marion Township, Franklin County, Ohio. Plaintiffs are the owners of and reside on neighboring property. This is an action brought under authority of §303.24 R. C. (§3180-24 GC) to permanently enjoin the defendants from constructing, establishing or operating a trailer park on their 11 acre tract of land on the ground that such would be a violation of the provisions of the County Zoning Resolution which became effective as to the area in question on May 20, 1952. The principal question presented is whether the defendants had established a "non-conforming" or "existing" use. This cause was submitted to this Court on the pleadings, stipulations of fact and briefs of counsel.

The stipulations so far as pertinent read as follows:

"1. Defendants purchased the 11 acre tract described in the petition on March 27, 1952, for the sole and express purpose of developing the same as a trailer park. Said purchase was made after an investigation of the County Zoning Regulations and map to determine what locations were available, under County Zoning, for trailer park use and with the knowledge that this land, and all other lands in Marion Township, was free from zoning regulations. Defendants would not have purchased said land had it been zoned so as to prevent its use for a trailer park.

"2. Upon purchase of said premises, defendants employed an engineering firm to survey the same and to prepare complete plans and specifications for the development of the entire tract as a trailer park. A copy of said plan was submitted to the secretary of the Franklin County Rural Zoning Commission, to determine whether the same complied with the requirements of the zoning regulations as to trailer parks. Defendants were advised by letter by said secretary that said plan complied with all requirements of the zoning regulations but that since the site in question was not subject to zoning, said commission had no jurisdiction in the matter. A copy of said plan is still on file in said office. Said plans were submitted to the Franklin County Board of Health and approved by it April 18, 1952; were submitted to the Ohio Department of Health, District Office at Delaware, Ohio, and approved by it on April 25, 1952, and were submitted to the Franklin County Sanitary Engineering Department and approved by it April 28, 1952. Said plans complied with all requirements of law and regulations of public authorities, and all necessary permits were obtained. A copy of said plan is submitted to the Court.

"3. Detailed plans for the construction of one of the two utility buildings shown on said plan, to-wit, the one nearer Lawrence Drive, were submitted to the Franklin County Department of Building Regulations and a permit for its construction was issued April 29, 1952. The permit describes said building as a ultility building for trailer park, and the above mentioned plan for the development of the entire tract as a trailer park was filed with said department with the application for said building permit, and is now on file with said department. Construction work was started on said building immediately and the excavation had been made and footers constructed when a temporary restraining order was issued by the Common Pleas Court of Franklin County, Ohio, in the case of Loretta Meuser, et al., Plaintiffs, v. G. Clifford Smith, et al., Defendants, No. 185126, which order was issued on or about May 2, 1952. Other than the completion of the foundation to the ground level, construction work was stopped as a result of this restraining order. Plaintiffs herein were plaintiffs in Case No. 185126.

"4. In April, 1952, defendants obtained a water tap permit on Lawrence Drive to serve all of said tract, at a fee of $110.00, and obtained a permit to cross Lawrence Drive with a sewer to serve all of said tract, at a fee of $21.00.

"5. After the purchase of said tract of land and prior to the institution of the above mentioned action, defendants purchased a bulldozer at a cost of $7200.00, a road roller at a cost of $1500.00 and a tractor at a cost of $1650.00, to be used in the construction of said proposed trailer park. Defendants had no other use for said equipment and bought it for the sole purpose of use in the construction of said trailer park.

"6. On May 11, 1952, defendants obtained from the Franklin County Department of Building Regulations a building permit for the other utility building shown on said trailer park plan. Thereafter defendants obtained a renewal of said permit to May 11, 1953, and in April, 1953, started construction of said utility building and have constructed the footers and foundation.

"7. Defendants employed legal counsel to defend the above mentioned suit, and on July 22, 1952, said restraining order was dissolved and the plaintiffs' petition dismissed, for the reason that the same failed to state a cause of action against defendants. Defendants incurred expenses in defending said action, in order to go forward with the construction of said trailer park, in the amount of $400.00.

"8. After the dismissal of said action, defendants purchased a back hoe at a cost of $750.00, for the sole purpose of using the same in the construction of said trailer park, laid up some additional block on the foundation of said utility building and did additional grading of the south portion of the tract on which said building was located.

"9. In the fall of 1952, defendants entered into contracts for the installation of water lines, sewer lines, and electricity in said 11 acre tract, said work to be done in the spring of 1953.

"10. On May 5, 1953, permission was obtained from the County Commissioners for the construction of private sewers in this tract, to be known as 'Private Sewer Improvement No. 499,' said construction to be made in accordance with the above mentioned trailer park plan, which

is on file in the County Sanitary Engineer's Office. At about the same time, permission to cross Smith Road with a sewer line was issued, and immediately thereafter the sewer contractor proceeded with the installation of sewers in accordance with the prior contract. Said sewers were designed specifically to serve a trailer park. The cost of said sewer installation was $3704.07.

"11. Prior to May 20, 1952, the date when zoning became effective in Marion Township, defendants had incurred expenses in the amount of approximately $1500.00 for engineering services, legal fees, permits and construction work in connection with the proposed trailer park construction. In addition thereto, defendants had invested $10,350.00 for construction equipment bought specifically for said proposed construction, which investments would not have been made except for said purpose. Had defendants been forced to abandon said construction as a result of said zoning, the loss on the sale of said equipment would have been not less than $2500.00, and the loss on disposition thereof at this time would be substantially greater.

"12. From the date of acquisition of the property in question until the effective date of zoning in Marion Township, the defendant G. Clifford Smith devoted his full time to planning, preparing for construction, and construction of said trailer park, and the defendant Curtis A. Smith devoted a substantial portion of his time to said undertaking.

"13. Since the effective date of zoning in Marion Township, defendant G. Clifford Smith has devoted a substantial portion of his time, to-wit, approximately one-third thereof, to the furtherance of said trailer park project; contracted for the installation of water lines in said project at a cost of $2600.00 and contracted with the Jess Howard Electric Co. for the installation of electrical lines and equipment for said trailer park at a cost of $5500.00. Defendants expended approximately $300.00 for grading part of said premises in the fall of 1952 and expended the sum of $87.00 in the spring of 1953, prior to the filing of this action, for a permit to cross Smith Road with sewer and for the back filling of said crossing, and the sum of $384.00 for work on the second utility building, located north of Smith Road.

"14. The land in question was bought as one tract, for the purpose of developing a trailer park on the entire tract and the defendants would not have undertaken to construct a part of said project if they had not expected to be able to develop the entire tract for this use, as it would not be economically feasible to operate a trailer park on a part only of said tract. Because of the location of existing water and sewer facilities, it was necessary to extend these lines from the south to the north, through said tract of land.

"15. The plaintiffs are neighboring property owners to the defendants.

"16. The plaintiffs would be specially damaged by the operation of a trailer park on the south 3 acres of defendants' tract as contemplated by the defendants.

"17. Edward Babbert, Wilbur Babbert and Carl Babbert held an oral lease given by defendants' predecessor in title, effective until De-

cember 31, 1952, on the north 8 acres of the 11 acres owned by the defendants.

"18. The 11 acres owned by the defendants upon which they contemplate the establishment and operation of a trailer park is now and has been since May 20, 1952, zoned as residential and agricultural.

"19. The Franklin County Zoning Resolution, which constitutes the zoning regulations for zoned area in Franklin County, Ohio, may be admitted in evidence herein. Section XX B of said resolution relates to trailer coach parks. Said resolutions does not permit the establishment of trailer parks on property zoned as residential and agricultural, in the absence of a non-conforming use.

"20. The defendants have not obtained nor applied for a use permit from Franklin County, Ohio, for the operation of a trailer park on their said property.

"21. The defendants did not have the right to possession of the 8 acres of the 11 acre tract owned by them until after December 31, 1952, and did no construction work of any kind thereon until after said date."

Case No. 185126 referred to in the stipulation was an action brought by Loretta Meuser, one of plaintiffs herein, and one Kathryn Price, on behalf of themselves and other neighboring property owners, against defendants, seeking a permanent injunction against the building or establishing of a trailer park on the same 11 acre tract of land herein involved. Such action was filed on April 30, 1952, and a temporary restraining order was issued on May 2, 1952. The prayer of the plaintiffs therein was predicated on the allegation that the establishment of such trailer park would result in a private nuisance which should be abated. That case was later submitted to the Court on a demurrer to the petition and on defendants' motion for judgment on the pleadings. On July 16, 1952, Judge Randall of this court, rendered his decision sustaining the demurrer and sustaining the motion for judgment on the pleadings on the ground that a trailer camp is not a nuisance per se and that unless and until actual operations established the trailer park to be a nuisance, there could be no basis for injunctive relief. Entry of the Court dismissing this action was journalized on July 22, 1952.

It is the contention of plaintiffs that no "non-conforming" or "existing" use had been established by the defendants prior to the time the zoning resolution became effective as to the property in question on May 20, 1952; that mere intention, plans and even expenditure of funds for construction preliminary to actual use are not enough; that to establish a valid "non-conforming" use the premises must have been actually used for the intended purpose; that as of May 20, 1952, no trailer camp was in existence and the only work actually done was excavation preliminary to the construction of a utility building, the construction of footers and the construction of a foundation to ground level; and that in any event, there could be no "non-conforming" use established as to 8 of the 11 acres, since such 8 acres were under lease for agricultural purposes and defendants did not have the right to possession thereto or do any construction work thereon until after December 31, 1952.

Defendants on the other hand, assert that by starting construction, they did establish an "existing" use within the meaning of the applicable regulation and enabling statutes; that they acquired a vested right to complete such and use the same under the "due process" clause of the United States Constitution; that the previous action being between the same parties and seeking the same relief (although predicated on a claim of nuisance and not on a claim of violation of zoning regulations) is res judicata, the zoning resolution having become effective during the pendency of such case and plaintiffs having failed to amend their petition to allege any zoning violation; that if the previous action is not res judicata, plaintiffs are guilty of laches by failing to assert their claim of zoning violation until the filing of the petition herein on May 8, 1953; and that the 11 acre tract cannot be divided into 8 and 3 acre tracts it being a single tract of land purchased by defendant for a single purpose, such purpose requiring the use of the entire tract and plaintiffs having stipulated such facts to be true.

At one time the ownership of land was considered as carrying with it the right to use such land for any purpose, regardless of what effect such use might have on others. As our society developed, the rights of the property owner to a complete freedom of choice in its use was first restricted by the development of the theory of the power of legislative bodies and of the courts to abate and prevent "nuisances." The development of zoning ordinances and regulations is of comparatively recent origin and it appears that the law on this subject is far from being crystallized. While zoning regulations ofttimes include prohibitions of uses which might be termed "nuisances," it is clear that such regulations are not so limited in their scope.

While the courts have almost universally held that the fact of "existing use" and claims of "due process" of law, incident to such "existing use" are not a defense to actions by legislative bodies abating or abetting "nuisances," it seems that a different situation is presented as to zoning prohibitions which do not involve "nuisances." Almost all zoning regulations by their specific terms have recognized the doctrine of "non-conforming" or "existing" uses. Where the specific language of the zoning regulation has not recognized this doctrine, the same end result has been obtained by the application of the "due process" of law provision of state and federal constitutions. This distinction in the treatment of "nuisances" and of other zoning regulations appears to be based on sound principles of equity and justice. While in one sense the distinction might seem to be one only of degree and sometimes most difficult of application, it appears that such distinction is based on the theory that the declaration of a "nuisance" does not change the existing law; that a "nuisance" is wrongful per se while a change in zoning not involving "nuisance" is a change in existing law.

To the extent that legislative bodies forbid that which was formerly completely lawful (not being by its nature a "nuisance") "due process" of law requires a court to protect rights which have become vested before such change. The difficulty, of course, is in determining exactly when rights become vested. Just what act or what series of acts must

have taken place before the change to create a vested right? From an examination of the many cases cited by counsel in their briefs and of other cases, it is clear that no single or simple test has been evolved. Certain criteria and general principles are evident, however.

Plaintiffs rely on the cases of State, ex rel. The Ohio Hair Products Co. v. Rendigs, 98 Oh St 251; Smith v. Juillerat, 161 Oh St 424; Anne Arundel County v. Snyder (Court of Appeals of Maryland), 46 Atl. 2d, 689; Brett v. Building Commissioner of Brookline (Supreme Judicial Court of Massachusetts) 145 N. E. 269; Marblehead Land Company v. City of Los Angeles (Federal District Court of California); 36 Fed. 2d, 242, and Fitzgerald v. Merard Holding Company (Supreme Court of Connecticut) 147 Atl. 513. The Ohio Hair Products Case involved the question of the authority of a municipality to revoke a building permit theretofore issued for the construction of a building to be used to manufacture and process packing house by-products. After the issuance of the permit, a company had entered into contract for the erection of the building and some work had been done. An ordinance was passed prohibiting the operation of such a business within a neighborhood area and the permit was then revoked by the city. The Supreme Court held that the expenditure of money, the entering into the contracts for the erection of the building, and the commencement of work under such contracts did not give the company a vested right to retain the permit. We believe it clear, however, that the court considered the type of business involved to be a nuisance as in effect it was declared by the city council to be. In the instant case, however, the business in question has already been judicially determined not to be a nuisance by Judge Randall in Case No. 185,126. Regardless of whether Case No. 185126 is res judicata as to other aspects of the case, it obviously is res judicata as to the determination that the operation of the trailer camp in question is not a nuisance per se. Based upon the distinction heretofore discussed between nuisances and zoning prohibitions not involving the question of nuisance, it appears that the instant case is entirely distinguishable from The Ohio Hair Products case.

Smith v. Juillerat, supra, involved a situation where a township zoning resolution forbade strip mining in the area in question. Prior to the adoption of the zoning resolution by vote of the electors of the township but after the formation of the resolution, the coal company applied and received a license to strip mine coal. In that case the only work that had been done prior to the effective date of the resolution was the drilling of a hole for testing purposes. No coal had been removed and the president of the company had testified that if the test proved inadequate or unsatisfactory, no coal would have been removed even if permitted by the Court to do so. The Supreme Court held, as indicated by the 4th paragraph of the syllabus that:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property."

This syllabus, of course, must be read in connection with the facts of that case. The "preliminary work" referred to was not, as here, actual construction for the specific purpose of use but, work of a "testing" nature. That case, therefore, does not support plaintiffs' contention that the trailer camp must actually be in full operation in order to establish a "non-conforming" use.

In Anne Arundel County v. Snyder, supra, the plaintiff sought a mandatory injunction to compel the issuance of a building permit for the erection of a show room, office lounge and store room. Plaintiff there applied for a building permit shortly before the adoption of zoning regulations which had the effect of prohibiting such use. No permit was ever issued as contrasted with the case here and no actual construction work begun. The only work done was preparation of plans by an architect and grading and landscaping in preparation of the erection of improvements. Here again, it appears that the only work done was in the words of our Supreme Court "preliminary work to that end."

In Brett v. Building Commissioners of Brookline, supra, the Court held that no "existing" use had been established merely because some excavation work had been done and on one lot "batter boards" erected. The Court concluded that since work "had only barely begun" no vested rights had been acquired and held that the Building Commissioners were authorized to revoke the building permits previously issued. That case does not support the proposition urged by plaintiffs that the use must be in full operation in order to constitute a "non-conforming" use. It does stand for the proposition that there must have been a "substantial" use made of the property in question.

Marblehead Land Company v. City of Los Angeles, supra, is similar to the case of Smith v. Juillerat, supra. Here, again, the only work which had been done was for the purpose of testing to determine the existence or non existence of oil.

In Fitzgerald v. Merard Holding Company, supra, all of the work was done without any building permit ever having been issued. Furthermore, title was taken to the premises on the very day of the adoption of the zoning regulations and what work was actually done, was done with full knowledge that it violated such regulations.

Plaintiffs rely on Sandenburg v. Michigamme Oil Company, 249 Mich. 372; 228 N. W. 707; Lansing v. Dawley, 247 Mich. 394, 225 N. W. 500; Coldwater v. Williams Oil Co., 288 Mich. 140, 284 N. W. 675; Rosenberg v. Whitefish Bay, 199 Wis. 214, 225 N. W. 838; State, ex rel Morehouse v. Hunt, 291 N. W. 645; Wasilewski v. Biedrzycki, 180 Wis. 633, 192 N. W. 989; Vine v. Zabriskie, 122 N. J. L. 4, 3 Atl. 2d, 886; Pelham View Apartments v. Switzer, 224 N. Y. Supp. 56; G and H Building Corporation v. N. Y., 195 N. Y. Supp. 68; Edwards v. City of Watertown, 286 N. Y. Supp. 923 and Willerup v. Village of Hempstead, 199 N. Y. Supp. 56.

While many of these cases are distinguishable from the instant case in certain respects, they all appear to stand for the proposition that where a substantial amount of work, including at least some actual construction is done in good faith and pursuant to lawful permits before the change in zoning, such work is sufficient to constitute a lawful

"non-conforming" or "existing" use, and that to constitute such "non-conforming" or "existing" use, it is not necessary that the use exist in full measure prior to such change. This view also appears to be supported by State, ex rel. Schroedel v. Pagels, 257 Wis. 376, 43 N. W. 2d, 349; Lutz v. New Albany, 101 N. E. 2d, 187; and City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d, 829.

This view also appears to have been adopted by Judge Gessaman of this court in **Ohio State Student Trailer Park Cooperative, Inc. v. Franklin County, 68 Abs 563.** In that case it was held that no "non-conforming" use had been established in view of the fact that only the acquisition of the property, the preparation of preliminary plans and some work toward the financing had been done prior to the change in zoning. After pointing out that the first work of construction had been done three months after the zoning regulation went into effect and after the property owners had been notified that their building permit was revoked, Judge Gessaman stated:

"Had some construction work been commenced prior to the effective date of the zoning resolution, a different question would have been presented to the Board of Zoning Appeals and to this court."

Like support is given to this conclusion by the following statement in 58 Am. Jur. at page 1022:

"Ordinarily, where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, the fact that plans had been made for the erection of a building before the adoption of a zoning ordinance prohibiting the kind of building contemplated is held not to exempt the property from the operation of the zoning regulation. On the other hand, structures in the course of construction at the time of the enactment or effective date of a zoning law are generally exempted from the restrictions or prohibitions thereof. This result has been reached, even in the absence of an express exemption of buildings in the course of construction, where the zoning law provides that no building 'shall be erected,' for the prohibited purpose. Indeed, there is authority to the effect that an owner of real estate who is proceeding with construction or alterations at a time when he has a right to do so acquires a vested right to proceed therewith which may not be taken away by subsequent zoning legislation."

Reference should also be made to the fact that such view was apparently within the contemplation of the legislature in its passage of enabling legislation. **Sec. 303.19 R. C.** reads as follows:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with the provisions of such resolution or amendment, but if any such non-conforming use is voluntarily discontinued for two years or more, any future use of such land shall be in conformity with §§303.01 to 303.25, inclusive, **R. C.** The board of county commissioners shall provide in any zoning resolution for the **completion,** restoration, reconstruction, extension, or substitution of

non-conforming uses upon such reasonable terms as are set forth in the zoning resolution."

We are referred to no specific resolution purporting to prescribe "reasonable terms" for the "completion" of "non-conforming" uses. The failure to enact such does not, however, lessen the legislative mandate providing that such uses might be completed where it would be unreasonable to prevent such completion.

While the above discussion would indicate that there is considerable authority to support the contention that defendants by their action of actually commencing construction before the zoning regulation had met the statutory requirements of a "non-conforming" or "existing" use, it is not necessary to predicate the decision of this Court solely on this fact. We are not prepared to say that in every case a comparable amount of construction work begun before the date of the zoning regulation would result in a "non-conforming" or "existing" use. Where as here, however, such construction is coupled with many other factors indicating that as between these defendants and these particular plaintiffs, the defendants have the superior claim to existing equities, such a result must follow. It must be remembered that all of the construction work done by defendants, both before and after the effective date of zoning, was pursuant to lawful permits issued by public authority and never revoked; that defendants would have proceeded further with actual construction as of the effective date of zoning had they not been enjoined in an action later determined to be without merit; that plaintiffs did not assert the zoning change in the prior action although such change became effective prior to the Court's decision and although they could have amended their pleadings to so allege (See Smith v. Juillerat, supra.); and that subsequent to the termination of Case No. 185126, defendants entered into other contracts and expended further sums of money with the view of completing the trailer park. Plaintiffs state in their brief that no further action was taken by them until the filing of the petition herein on May 8, 1953, because they believed that defendants had abandoned the project. There was no evidence to this effect and since the building permits theretofore issued had not been revoked by the county, it would seem that plaintiffs should have known that defendants presumably had the authority to continue to act thereunder.

We turn now to the question of whether the 11 acre tract is divisible. Plaintiffs have asserted that even if defendants had the right to complete the construction of the trailer camp on the three acres, they cannot do so on the remaining 8 acres since no actual construction had begun on this 8 acres prior to zoning and since 8 acres were under lease which did not terminate until December 31, 1952. Had defendants possessed only a contingent or uncertain right of possession in the future to these 8 acres, a different situation would have been presented. Here, however, the stipulation agreed to by plaintiffs, states that:

"The land in question was bought as one tract, for the purpose of developing a trailer park on the entire tract and the defendants would not have undertaken to construct a part of said project if they had not expected to be able to develop the entire tract for this use, as it would

not be economically feasible to operate a trailer park on a part only of said tract. Because of the location of existing water and sewer facilities, it was necessary to extend these lines from the south to the north, through said tract of land."

Furthermore, the plans submitted to public authorities before zoning, included the entire 11 acres and a building permit was issued for the erection of the building on the 8 acres and was never revoked.

On the question of the divisibility of this property, this case is entirely distinguishable from the case of Marion W. Davis v. O. C. Miller, et al., No. 180260, on the Dockets of this court. In that case Judge Harter held that the fact that certain property of the appellant had been used under lease for quarrying of stone prior to the effective date of the zoning resolution, did not entitle the appellant to use other land owned by him for this same purpose subsequent to the enactment of the zoning resolution. There Judge Harter concluded that the appellant had treated his property as to separate lots for many years and these two lots were separated by a public highway. Here, as heretofore noted, the plaintiff has stipulated that the land in question was bought as one tract for a single purpose and while there is a public highway which separates a portion of the 11 acre tract, such public highway does not separate the land into the 3 and 8 acre parcels under consideration.

The prayer of the petition that defendants be permanently enjoined from constructing, establishing or operating a trailer park upon the property in question is denied and final judgment may be entered for defendants at plaintiffs' costs. Entry may be prepared accordingly.