STATE, EX REL. CUBBON, JR., ET AL., *v.* WINTERFELD ET AL., BOARD OF TRUSTEES.

(No. 5046—Decided October 7, 1957.)

*Messrs. Cubbon & Rice,* for relators.

*Mr. Harry Friberg,* prosecuting attorney, and *Mr. Ben A. Neidlinger,* for respondents.

SMITH, J. This is an action originating in this court on a petition in mandamus for a writ compelling the Board of Trustees of Adams Township, Lucas County, Ohio, respondents, to issue to relators a certificate of occupancy of their land in the township. Application for alternative writ was granted ordering respondents to show cause why a writ of mandamus should not be allowed. The case is submitted and considered on the petition, the answer of respondents, stipulation of the parties, the zoning regulations in the township, and briefs and arguments of counsel. Counsel agreed that the case be heard on its merits, and, therefore, the motion to dismiss the petition and demurrer thereto filed by respondents were overruled.

The petition alleges and the answer and stipulation admit that relators are the owners in fee of lot No. 663 in Westhaven Third, an addition in Adams Township, Lucas County, Ohio; that relators James R. Doran and Nancy L. Doran are vendees of a land contract dated January 22, 1957, whereby they are purchasing the aforesaid premises; that on the premises is a building approximately 20 feet by 24 feet in dimension, which has been continuously occupied as a residence since approximately 1928 and most recently occupied from the early part of 1954 continuously until May 30, 1956, by one Gilford W. Coolidge and his wife, Marian D. Coolidge, and has been vacant from that date to the date of filing the petition.

It is alleged further in the petition and admitted by the answer that there was enacted in May of 1956, a comprehensive zoning plan for Adams Township in Lucas County, Ohio, and that such comprehensive plan went into effect during May, 1956; and that the following sections and pertinent parts thereof provide as follows:

Section 15 A-1. "No occupancy * * * shall take place on any parcel or in any building until a certificate of occupancy therefor shall have been issued by the Board of Township Trustees * * *."

Subsection 3: "Written application for a certificate of oc-

cupancy shall be made to the Board of Township Trustees * * *."

Subsection 4: "Every certificate of occupancy shall state that the building or the proposed use of a building or land complies with all provisions of this resolution * * *."

Subsection 5: "The fee for the certificate of occupancy shall be two dollars ($2.00) payable to the Township Clerk."

Further it is admitted that additional sections of the comprehensive zoning plan provide, among other things, numerous rules, specifications and regulations regarding height, width, living area, etc. concerning buildings, and also rules and regulations concerning the use of parcels of land; and that section 13, subsection B-1a of the zoning plan, dealing with the continuance of a nonconforming use, provides as follows:

"The lawful use of any building existing at the time of the adoption of this resolution may be continued, although the use of such building does not conform to the regulations of the zoning district in which such building is located * * *."

Relators Frank W. Cubbon, Jr., and Barbara D. Cubbon, it is admitted, during May of 1957, pursuant to the aforesaid applicable sections of the zoning plan, made application for a certificate of occupancy for the premises accompanied by the required fee and therein advised that the building in question has been occupied as a residence for many years and specifically was so occupied during all of 1955 and up until May 30, 1956. The Board of Trustees, respondents herein, considered same and passed a resolution dated May 21, 1957, as follows:

"Moved by Hasty, seconded by Baumberger that Lou Wucher be instructed to deny a zoning approval on Lot Six hundred sixty-three (663) Westhaven Third addition filed by Mr. Frank W. Cubbon, Jr. It is deemed by the Board of Trustees that this building is below area requirements of zoning and the building also is of a sub-standard residential nature. Note on this motion, Hasty, yes, Baumberger, yes, and Winterfeld, yes."

The petition alleges further, and the answer admits, that section 14 of the zoning plan provides for the creation of a Board of Zoning Appeals, setting forth the membership requirements and the jurisdictional limits under subsection B of sec-

tion XIV, and that, pursuant thereto, Frank W. Cubbon, Jr., and Barbara D. Cubbon filed an appeal from the resolution of the Board of Trustees to the Board of Zoning Appeals; that such appeal by written application was accompanied by the required fee of $25; and that on July 10, 1957, the board met to consider the appeal and at the time refused to pass on the granting of a certificate of occupancy for a previously existing nonconforming use on the basis that the Board of Appeals was without jurisdiction to reverse the ruling of the Board of Trustees, respondents herein.

The foregoing admitted and undisputed facts show a clear legal right in relators to the remedy in mandamus. On the effective date of the Zoning Plan for Adams Township, relators had an existing nonconforming use of occupancy in their property as a residence. This use became arrested and frozen thereby under the terms of Section 519.19 of the Revised Code, the pertinent part of which provides:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *."

Consistent with the statute, like language and provision appear in section 13, subsection B-1a, of the zoning plan adopted by the township. It was stated in the brief of relators, and admitted in argument by counsel for respondents, that the Board of Trustees denied the application for certificate of occupancy under Section 3-D of the Zoning Plan, as follows:

"Denial is based upon our requirement of six hundred (600) square feet per residence, and your building contains only four hundred eighty (480) square feet."

Such regulation can not apply to a lawful existing nonconforming use contrary to Section 13-1a of the Zoning Plan.

The zoning plan does not attempt to regulate an existing nonconforming use except upon discontinuance of nonconforming use for two years or more, which does not apply to the facts of this case. See Section 519.19, Revised Code, and Section 13-B of Zoning Plan. The ground of denial to relators for occupancy permit therefore stems from an erroneous and false premise.

The lawful nonconforming and continued use of relators cannot thereby be disturbed. It may parenthetically be observed that if any such provision in the zoning plan so provided, it would be clearly a patent violation of constitutional rights.

Counsel for respondents strongly urge that the writ of mandamus does not lie where an adequate remedy is afforded relators. They cite Sections 519.12 and 519.15 of the Revised Code, providing for appeals in the former to the Common Pleas Court, and in the latter to the Board of Zoning Appeals and thence to the Common Pleas Court. We determine that where a clear right is shown, the provisions for such cumbersome appeals do not constitute an adequate remedy at law in this case. An appeal was taken by relators to the Board of Zoning Appeals which refused to hear the same upon the ground of lack of jurisdiction. If such decision constitutes a final order, a decision on appeal to the Court of Common Pleas would not be dispositive of relators' right upon remand to the Board of Zoning Appeals for hearing on the merits, as and when thereafter a decision by the Board of Zoning Appeals must hold that denial of occupancy permit was contrary to law.

The statutory action in mandamus should not be emasculated of its proper function by too narrowly construing the legislative prerogative of original conception. Restrictive generalization of the function of the writ of mandamus cannot become the absolute criterion of its proper application to the particular facts in each case. It has variously been denominated an extraordinary remedy and no substitute for an appeal where there is a plain and adequate remedy at law. Also, the facts in each case must show a clear, legal right to invoke its operation, there being no discretion lodged in respondents. To vitalize the purpose of the statute on mandamus, the Supreme Court of Ohio by a unanimous decision in *State, ex rel. Emmich,* v. *Industrial Commission,* 148 Ohio St., 658, 76 N. E. (2d), 710, holds in the first paragraph of the syllabus, as follows:

"1. Section 12287, General Code [Section 2731.05, Revised Code], provides that a writ of mandamus 'must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law.' If the available ordinary legal remedy is not plain and adequate, the court may, in the exercise of sound discretion, grant the writ."

On the extraordinary writ of prohibition, it is held in *State, ex rel. Hartinger,* v. *Court of Common Pleas,* 84 Ohio App., 241, 86 N. E. (2d), 810, involving change of venue without consent of accused, that appeal from decision of respondent "would certainly be a cumbersome procedure and in our opinion is not an adequate remedy at law." In an action in mandamus, the court can declare a zoning ordinance of a municipality unconstitutional and invalid. *State, ex rel. Selected Properties, Inc.,* v. *Gottfried,* 163 Ohio St., 469, 127 N. E. (2d), 371.

The application for a certificate of occupancy in the instant case is analogous to the decisions on application for a building permit. *State, ex rel. Moore Oil Co.,* v. *Dauben, Bldg. Insp.,* 99 Ohio St., 406, 124 N. E., 232; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Insp.,* 120 Ohio St., 352, 166 N. E., 228; and *State, ex rel. Adams,* v. *Pendleton,* 100 Ohio App., 1, 135 N. E. (2d), 458 (additional cases cited therein).

The rudderless ship of urban and rural building development made zoning regulations inevitable as a measure to steer expansion in a civilized manner for the general good. The zeal engendered by envisioned perfection can not blind us to certain fundamental and established private property rights reserved and vouchsafed by both the state and the federal Constitutions.

The writ of mandamus is, therefore, allowed.

*Writ allowed.*

Deeds and Fess, JJ., concur.