THE STATE, EX REL. BUGDEN DEVELOPMENT CO., *v.* KIEFABER ET AL.

(No. 2552—Decided November 8, 1960.)

*Mr. Clement V. Jacobs,* for relator.
*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. William L. Falknor,* for respondents.

CRAWFORD, J. This is an action in mandamus. The relator, a plat development firm, joined as respondents the Montgomery County Planning Commission, the Washington Township Board of Zoning Appeals, the township zoning inspector and the township trustees.

The prayer is for a writ of mandamus ordering respondents "to approve platting of lands of relator which conforms with areas of 15,000 square feet or more and set back of 50 feet as to 123 of said lots and of 40 feet as to 3 lots, provided in every other respect such platting complies with the law and regulations."

From stipulations and the evidence, we observe these facts: Relator is a partnership, composed of the same individuals who formerly operated the now dissolved corporation, Bugden Development Company, Inc. In 1955, the corporation acquired contiguous tracts aggregating 86.72 acres which were then in an area zoned by the township as R-1 (suburban residence). Title was transferred from the corporation to the partnership on March 30, 1956. The minimum lot size then required was 15,000 square feet and the minimum width 80 feet.

As required by the subdivision regulations for Montgomery County, which are in evidence, the Montgomery County Planning Commission was furnished a preliminary plat of all the land above referred to, which was known as Southshire, and consisted of 196 lots. Thereafter, 4.56 acres thereof, known as Section 1, and containing lots Nos. 1 through 10, was admitted to the plat records on January 11, 1956.

Another 14.481 acres, known as Section 2, and containing lots Nos. 11 through 39, was admitted to the plat records on July 10, 1956.

This was done with the approval and acceptance of the Montgomery County Planning Commission, which is the sole governmental agency empowered to approve plats and subdivisions for recording in the office of the county recorder.

Subsequent to the recording of the plats of Sections 1 and 2, an election was held in Washington Township adopting a comprehensive zoning resolution, and on February 11, 1957, the county board of elections certified approval of the resolution. By virtue thereof relator's remaining land, outside of Sections

1 and 2, came under zoning classification R-4, which required that each lot have a minimum area of 20,000 square feet, a minimum frontage of 100 feet and a minimum front yard depth of 60 feet, etc.

Many lots on the preliminary and unrecorded plat of relator's remaining land, outside Sections 1 and 2, did not comply with this new requirement. On September 20, 1958, relator made application to the Washington Township Zoning Board of Appeals to authorize variances in these particulars. That board on November 18, 1958, signified its willingness to grant the variances, provided a street known as Lewisham Avenue was moved to the south, and provided that the plan meets with the approval of the county planning commission. On January 30, 1959, that commission declared its disapproval of the moving of the street on the grounds that it was unnecessary and would create a reverse curve which would be hazardous. Thereupon the township zoning board of appeals, on February 7, 1959, rejected the application for all variances.

Thereafter, relator applied to the township zoning board of appeals to grant variances for additional unrecorded lots. After public hearing on July 7, 1959, this application was denied on August 14, 1959, on the basis that such variances would be contrary to the public interest and would materially impair the purposes of the township zoning resolution.

Relator sought approval of the township zoning inspector, which was denied on August 14, 1959.

At the time of platting Sections 1 and 2 the county board of health had granted permits for installing septic tanks and leaching beds on the lots comprising those sections, but later declared that no additional septic tank permits would be issued for relator's remaining land.

At a time subsequent to the adoption of the new Washington Township Zoning Resolution and relator's effort to secure from the township zoning board of appeals approval for nonconforming use, relator, with the approval of the county commissioners, established what is known as the Southshire Sewer District, which included all its land, and installed sanitary sewers and participated in construction of a pumping station, at a considerable expense to relator. An arrangement was

made, however, whereby a substantial portion of this expense might ultimately be recouped from the charges made for future tap-ins.

Respondents assert that even if relator should have a just cause of complaint, there is nevertheless an adequate remedy at law by way of appeal to the Court of Common Pleas.

Section 711.10, Revised Code, provides for such appeal from a decision of the county planning commission. Chapter 2506, Revised Code, would apparently afford a similar appeal from a decision of the township zoning board of appeals.

Relator protests that such multiple appeals, even if available, would be vexatious and inadequate. Such procedures have sometimes been referred to as "cumbersome," and therefore inadequate in certain circumstances. See *State, ex rel. Cubbon*, v. *Winterfeld*, 104 Ohio App., 260.

Respondent county planning commission also contends that the relator has not qualified for relief in mandamus because no demand has been made upon it to perform the act now sought. Relator apparently believes that the request for approval, with the proposed change in Lewisham Avenue required by the township zoning board of appeals as a condition for granting variances, constituted such demand. There may be a serious question as to whether there was such a demand as is prerequisite to the right to obtain a writ of mandamus.

But passing for the present these objections to the particular remedy of mandamus, let us first determine the merits of relator's complaint.

A principal contention of relator is that the zoning statutes do not empower a township to regulate the minimum size of lots, frontage, yard depths, etc., and that such provisions in this resolution bear no reasonable relationship to the public health, safety and morals.

Section 519.02 *et seq.*, Revised Code, provides that such powers may be exercised by township trustees and electors. A zoning resolution adopted in accordance with these statutes, if reasonably related to promotion of the public health, safety and morals, may regulate, among other things, "percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population * * *."

The validity and constitutionality of zoning legislation, like other enactments, is always to be presumed. *Curtiss* v. *City of Cleveland*, 170 Ohio St., 127; 10 Ohio Jurisprudence (2d), 235, Constitutional Law, Section 158; *Cleveland Trust Co.* v. *Village of Brooklyn*, 92 Ohio App., 351; *Davis* v. *McPherson*, 72 Ohio Law Abs., 232, appeal dismissed, 164 Ohio St., 375.

That lot sizes, etc., may be regulated by such resolutions in the proper exercise of the police power is no longer an open question in Ohio. And far larger areas, yard spaces, etc., than those involved here have consistently been approved and held valid.

Relator's argument on this question includes comment that its own Sections 1 and 2 do not comply with the present zoning resolution. If existing plats were to prevent future zoning of other areas, zoning programs would be seriously circumscribed.

On the other hand, relator objects that this zoning resolution does not provide for future progress. Respondents answer that Section 519.12, Revised Code, permits amendments to zoning legislation. The point of relator's argument is that no consideration has been given to the effect of the sewer installation, which, it contends, should render smaller lots acceptable as being consistent with public health, etc. We perceive the logic of this observation, but it is an argument which must be addressed to the legislative body. It will not justify us in substituting our judgment for that of the legislative authority, and does not render the resolution invalid.

Relator insists that the county planning commission gave approval to a preliminary plat of the entire 86.72 acres owned by relator and that, therefore, it is bound to approve the final plat, assuming that the final plat still follows the same general requirements.

Respondents deny that such preliminary approval was given to relator's remaining undeveloped land. The evidence leaves the matter in some doubt. It appears that there was no separate preliminary approval of the remaining land; that any preliminary approval which may have been given either pertained only to Sections 1 and 2, as contended by respondents, or to the preliminary plat of relator's entire tract.

But let us assume for our present analysis that approval of the preliminary plan for the remaining land was given by the county planning commission. The purpose of the preliminary plan is stated in the subdivision regulations as follows:

"The purpose of the preliminary plan is to show, on a map, all the facts which may enable the commission to determine whether the proposed layout of the land is satisfactory from the standpoint of public interest. The plan shall be prepared by a registered surveyor." (Article 3, Section 1 B.)

Relator's witness, William H. Bugden, a member of its firm, during the course of his testimony elaborated upon this the purpose. He said, "The preliminary map does a lot of things for the planning commission and for the community. With development going on, streets have to be co-ordinated by the various plats and the various parcels of land * * *."

"Another factor is the Montgomery County Thoroughfare Plan, wherein roads, thoroughfares like Rahn Road, have to be forecast where they are going.

"Another very important item is this topography survey which determines the flow of storm drainage. Another item is the flow of sanitary sewers. Another item is the fact that the lots as laid out on the preliminary conform to the zoning requirements in force at the time. Now I think those are the highlights."

He mentioned also such related matters as the laying out of water lines, electric and telephone lines, gas mains, etc.

According to the county subdivision regulations, a developer must secure final approval of any portion of a tract when he is ready to develop it, provided it conforms to all requirements of the regulations.

Article 4, Section 1, provides:

"The final plan shall conform to the preliminary plan, and it may constitute only that portion of the approved preliminary plan which the subdivider proposes to record and develop at the time, provided that such portion conforms with all the requirements of these regulations."

Article I, Section 10, is part of these regulations, with which the plat in question must conform. It reads:

"Whenever a township or part thereof has adopted a county

or township zoning plan, proposed subdivisions located in the zoned area submitted for approval of the commission shall conform to the requirements as specified in the zoning plan for the township or part thereof, excepting as specified in Article I, Section 5.''

Article 1, Section 5, simply provides that in any event at least the minimum requirements contained in the regulations shall be complied with.

In giving or withholding final approval, the planning commission must necessarily do so in the light of conditions and requirements and zoning regulations then existing.

Therefore, whenever relator, in pursuance of the regulations, obtained any preliminary approval that may have been given, it proceeded with full notice of the regulations, including that pertaining to township zoning.

Obviously, the planning commission cannot, by way of final approval of a plat which violates a zoning resolution adopted after the preliminary approval is given, repeal or nullify such resolution. Nor can any preliminary approval of a proposed plat which the subdivider is not yet ready to record and develop preclude the adoption of zoning resolutions.

Relator also invokes Article 4, Section 2, of the regulations, which provides:

''The final map shall be filed not later than twelve (12) months after the date of approval of the preliminary plan, otherwise it will be considered void unless an extension is requested by the developer.''

This cannot signify that the commission is obliged to grant an extension whenever requested, as such a construction would render the provision a nullity. Discretion is therefore lodged in the commission to grant or to withhold an extension. And discretion cannot be controlled by mandamus.

But it is argued that this is one entire project, and that even preliminary approval, once given, must be followed by final approval of various sections until the whole project is complete.

The case of *Meuser* v. *Smith*, 75 Ohio Law Abs., 161, is cited in support. However, that case involved the development of a trailer camp. Considerable improvements to that end

had been made which were of practical value only if the entire tract were developed as a trailer camp. Then a zoning ordinance was passed forbidding such use. It was held that in those circumstances such nonconforming use must be approved.

Such a situation cannot be compared to the instant case, where the only expense incurred beyond that usually involved in platting lots was the sewer installation, which was voluntarily made by relator after the adoption of the zoning resolution, and which will still remain useful and valuable to the remaining land, even though the zoning resolution is complied with.

The county planning commission is, as both sides agree, the only governmental agency empowered to approve plats or subdivisions for recording. Section 711.10, Revised Code. Therefore, it is doubtful that the prayer of the petition is broad enough to support any order against any of the other respondents, even if relator had made out a case against them.

Nevertheless, we have considered the complaint against the township zoning board of appeals in denying variances for pre-existing nonconforming use.

Such decisions rest in the discretion of the board, and its decision is not to be disturbed unless it is found to be unreasonable. Section 519.14, Revised Code; *Mentor Lagoons, Inc.*, v. *Zoning Board of Appeals*, 168 Ohio St., 113.

Section 519.19, Revised Code, provides for the continuance of nonconforming uses. But this land, being undeveloped, does not come within the category of a nonconforming use, for it was not actually being *used* in the sense in which that term is generally accepted. It has been held that the mere laying out of vacant lots does not constitute such a use as to justify a variance. *Smith* v. *Juillerat*, 161 Ohio St., 424.

Hence, it cannot be said that the action of the board was either unreasonable, arbitrary or capricious. In fact, the board, in suggesting its willingness to grant certain variances if Lewisham Avenue were moved, exhibited a reasonable disposition to consider relator's problems.

It is urged that the board granted variances in a similar neighboring plat. It is generally recognized that no two such cases are precisely alike, and that such questions must be determined upon the particular circumstances of each case.

Nor does relator present a sufficient case of hardship which would either invalidate the zoning resolution as applied to its lands, or upset as unreasonable the zoning board's denial of a variance.

In revising the plat to conform to present zoning requirements, the number of lots will necessarily be considerably reduced. The resulting effect on the cost and selling prices of the lots is vigorously argued, as is the question whether this will involve substantial loss of profit. It is inevitable that, unfortunately, many zoning ordinances affect the potential profit of someone; but we perceive nothing here which would amount to confiscation or such extreme hardship as to invalidate the resolution. It does not render it economically unfeasible to develop the remaining land.

The considerable expense incurred by relator in constructing sewers was apparently voluntarily undertaken, without any assurance that the things relator hoped for would be achieved. An expense knowingly and voluntarily assumed will not avail to support a claim of unreasonable hardship. And this expense was incurred, as already observed, subsequent to the adoption of the new zoning resolution, and to relator's effort to secure approval for nonconforming use. Also, the arrangement for recoupment of a substantial portion thereof mitigates the force of this complaint.

A case upon which the relator apparently places particular reliance is *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland,* 169 Ohio St., 375, which affirmed the judgment of the Court of Appeals, reported in 108 Ohio App., 99.

That case differs from the present in several vital particulars. A writ of mandamus was there granted to compel the issuance of a building permit. Other and essential differences from the instant case are pointed up in the fourth paragraph of the syllabus, wherein the Supreme Court said:

"Where an isolated parcel of land is similarly zoned as are parcels with which it is contiguous on one side but it extends into and is surrounded on the three other sides by an area of land zoned for less restricted uses, where no feasible economic use of the former land can be made under the present zoning, and where a reduction to the next less restricted use is in

harmony with the needs and nature of the neighborhood, the refusal by municipal authorities to extend the less restricted use to such property constitutes a taking of it without due process, resulting in its confiscation.''

It is our conclusion that the zoning resolution is valid; that the action of the Washington Township Zoning Board of Appeals in denying approval of variances for nonconforming use was reasonable; and that the Montgomery County Planning Commission properly denied approval of relator's plat because of its failure to comply with the township zoning resolution.

The writ of mandamus will be denied.

*Writ denied.*

WISEMAN, P. J., and KERNS, J., concur.