THE STATE, EX REL. RIVER GROVE PARK, INC., *v.* CITY OF KETTERING ET AL.

(No. 2606—Decided April 2, 1962.)

*Messrs. Young, Pryor, Strickland & Falke,* for relator.
*Messrs. Landis, Ferguson, Bieser & Greer,* for respondents.

KERNS, J. This is an action filed originally in this court wherein the relator seeks a writ of mandamus ordering the respondents to issue a building permit for the construction of commercial buildings in an area now designated as "Residence 1" by the Kettering zoning ordinances.

In January 1960, the relator entered into a written agreement to purchase approximately sixteen acres which is the subject of the present dispute. The agreement, however, is subject to the condition that the relator may terminate the agreement if it is unable to get the property rezoned from R-1 to B-3 and B-1, as those classifications appear in the Kettering zoning ordinances. This land is part of thirty-seven acres owned by James Pyper and Margaret Routsong located on the west side of Far Hills Avenue in the city of Kettering. The land is now, and since 1946 has been, used for a gravel mining business, which business operation, having been in existence prior to the adoption of a zoning code in 1955, qualifies as a nonconforming use.

The sixteen-acre tract in question has a depth of approximately 565 feet and extends north from the south boundary of Kettering for a distance of 1286 feet. On the south it is bounded by a section of Washington Township which contains a

number of single family residences. On the west is the gravel pit, west of which is a comparatively new development of single family residences. To the north is a lane for access to the gravel pit which is south of a row of trees and a stream which runs east and west from Far Hills Avenue. Still further north is a church property which has a frontage of approximately 300 feet. To the east, across the highway (State Route 48) and a two-lane service street is a development of single family residences known as Marinole Park.

Both the relator and respondents have stated the initial issue as follows: "Is relator the owner in fee simple or does it have an equitable interest therein?" Although this question has been briefed and argued, it is doubtful that a negative answer thereto would be dispositive of this case. Here the action is in mandamus, and the relator, in order to maintain such an action, is not necessarily required to show either a legal or equitable interest in the land involved. It need only show that it has some beneficial interest in the act sought to be compelled. Section 2731.02, Revised Code; *State, ex rel. Skilton, v. Miller, Judge,* 164 Ohio St., 163. What constitutes a "beneficial interest," however, has been the subject of considerable litigation. 18 Ruling Case Law, 303, Mandamus, Section 238. In the case of *State, ex rel.,* v. *Henderson,* 38 Ohio St., 644, 648, it was said:

"* * * As regards the degree of interest on the part of the relator, requisite to make him a proper party on whose information the proceedings may be instituted, a distinction is taken between cases where the extraordinary aid of a mandamus is invoked, merely for the purpose of enforcing or protecting a private right, unconnected with the public interest, and those cases where the purpose of the application is the enforcement of a purely public right, where the people at large are the real party in interest, and, while the authorities are somewhat conflicting, yet the decided weight of authority supports the proposition that, where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject matter, since he is regarded as the real party in interest and his rights must clearly appear. * * *"

In the present case the contract introduced into evidence clearly shows that the relator has a "beneficial interest" which is independent of that which it holds in common with the public

at large, and that interest is, in our opinion, sufficient to maintain the present action.

The second preliminary question raised is whether the relator applied for a building permit before bringing the mandamus action. The record fails to disclose a formal application for a permit, and the parties are apparently in substantial agreement that no formal application for a permit was ever made. The evidence discloses, however, that certain officers of the relator corporation made informal requests for a building permit and were advised by the Building and Zoning Inspector that it would be useless to make a formal application. Specifically, the zoning inspector testified that he said: "I wouldn't issue a building permit anyway."

The cumulative effect of the testimony upon this issue leaves no doubt that a formal application for a building permit would have been a vain act. In fact, the respondents protest too much now to even argue reasonably that a formal application would have been availing then. It is also persuasive, though not controlling, that a dismissal of the action upon the suggested ground would accomplish nothing at this juncture except further delay and expense. Accordingly, it is our opinion that the verbal request of the officers of the relator corporation for a building permit was sufficient to serve as a prerequisite to the right to maintain the present action.

In logical sequence, the next question for determination is whether the relator has chosen the proper remedy.

The law is well settled in Ohio that mandamus will not lie where there is an adequate legal or equitable remedy. 35 Ohio Jurisprudence (2d), 278, Section 31. Its object is to supply the want of a legal or equitable remedy rather than to supplant or supersede every other form of remedy. Therefore, to authorize the issuance of a writ of mandamus, two things must coexist: (1) the absence of a plain and adequate remedy in the ordinary course of law, and (2) the clear right to have the act performed. 35 Ohio Jurisprudence (2d), 272, Section 26. There is considerable confusion, however, in applying these basic principles of the law of mandamus to zoning cases because of the apparent conflict in reported decisions. More often than not in this field of law, it appears that courts have been prone to examine the merits of the particular case without

regard for the chosen remedy rather than send a litigant on a circuitous route that would eventually lead to the same goal. For this reason, precedent is not completely persuasive. Each case is dependent upon its own merits.

In the instant case, the relator admits that it does not seek to have the Kettering zoning ordinance enforced, but prays rather that the ordinance be declared void; and the respondents have suggested a number of remedies, other than mandamus, to accomplish the desired result. These include (1) an action for declaratory judgment to obtain a determination of the validity of the zoning ordinance; (2) injunction to prevent the enforcement of the zoning ordinance; (3) an administrative appeal under Chapter 2506, Revised Code; and (4) an appeal to the Board of Zoning Appeals under Section 929 of the Kettering zoning ordinances. And the mere fact that zoning regulations have been attacked at various times by the means suggested lends support to the respondents' contention that the relator cannot initially resort to mandamus here. *Curtiss* v. *City of Cleveland,* 166 Ohio St., 509, and 170 Ohio St., 127; *State, ex rel. Grant, Jr., Exr.,* v. *Kiefaber,* 171 Ohio St., 326; *Criterion Service, Inc.,* v. *City of East Cleveland,* 55 Ohio Law Abs., 90; *Henle* v. *City of Euclid,* 97 Ohio App., 258; *State, ex rel. Ricketts,* v. *Balsly, Bldg. Insp.,* 171 Ohio St., 533; *State, ex rel. The Gund Co.,* v. *Village of Solon,* 171 Ohio St., 318; *State, ex rel. Fredrix,* v. *Village of Beachwood,* 171 Ohio St., 343; *States, ex rel. Iaus,* v. *Carlton,* 168 Ohio St., 279; *Shaker Coventry Corp.* v. *Shaker Heights Board of Zoning Appeals,* 115 Ohio App., 472.

However, in the case of *State, ex rel. Killeen Realty Co.,* v. *City of East Cleveland,* 169 Ohio St., 375, the right to a writ of mandamus to compel the issuance of a building permit was upheld. At page 377, the court said:

"The right to maintain such an action as the instant one has been determined in a long line of cases in which this court has consistently held that a writ of mandamus may be allowed to compel the granting of building permits denied by local authorities on zoning grounds. Those cases include *State, ex rel. Wiegel, et al., Trustees,* v. *Randall, Dir.,* 160 Ohio St., 327, 116 N. E. (2d), 300; *State, ex rel. Fairmount Center Co.,* v. *Arnold, Dir.,* 138 Ohio St., 259, 34 N. E. (2d), 777, 136 A. L. R., 840;

*State, ex rel. Synod of Ohio of United Lutheran Church,* v. *Joseph et al., Comm. of Village,* 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274; *Hauser, Commr. of Buildings,* v. *State, ex rel. Erdman,* 113 Ohio St., 662, 150 N. E., 42; *State, ex rel. Associated Land & Investment Corp.,* v. *City of Lyndhurst,* 168 Ohio St., 289, 154 N. E. (2d), 435; *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser, Inspr. of Buildings,* 120 Ohio St., 352, 166 N. E., 228; and *State, ex rel. Gaede,* v. *Guion, Commr. of Buildings,* 117 Ohio St., 327, 158 N. E., 748. Thus the right to maintain a mandamus action to compel the issuance of a building permit in a proper case is well established.''

The fourth paragraph of the syllabus of that case gives some insight into what might be considered a ''proper'' case and reads as follows:

''4. Where an isolated parcel of land is similarly zoned as are parcels with which it is contiguous on one side but it extends into and is surrounded on the three other sides by an area of land zoned for less restricted uses, where no feasible economic use of the former land can be made under the present zoning, and where a reduction to the next less restricted use is in harmony with the needs and nature of the neighborhood, the refusal by municipal authorities to extend the less restricted use to such property constitutes a taking of it without due process, resulting in its confiscation.''

The same court which originally decided the *Killeen Realty* case recently made the following observation in the case of *Shaker Coventry Corp.* v. *Shaker Heights Board of Zoning Appeals, supra* (115 Ohio App., 472), at 476:

''Thus, it will be noted that the latest decisions by the Courts of Appeals and by the Supreme Court are to the effect that the proper remedy to test the validity of zoning ordinances and for a judicial review of the final order of administrative boards of municipalities is by way of appeal under the procedure provided for in Chapter 2506 of the Revised Code.''

In the present case, the relator claims ''it is obvious that after the planning commission and the council of Kettering refused an application to rezone the subject premises, the Board of Zoning Appeals is not going to override them and allow a business use for the property * * *.'' We agree, but only be-

cause of the facts of this case, and not necessarily because of the inadequacy of the remedy. Here the relator entered into the conditional contract with full knowledge of existing zoning regulations, and "an expense knowingly and voluntarily assumed will not avail to support a claim of unreasonable hardship." *State, ex rel. Bugden Development Co.,* v. *Kiefaber,* 113 Ohio App., 523. It has also been noted that the agreement between the relator and the owners of the land in question is subject to a condition precedent, *i.e.,* that the land be rezoned. See *W. B. Gibson Co.* v. *Warren Metropolitan Housing Authority,* 65 Ohio App., 84; *Kallins* v. *Rex, Inc.,* 71 Ohio Law Abs., 525. The agreement will therefore have no binding or operative effect upon the relator unless or until the present zoning of the sixteen-acre tract is changed. This being so, the relator would have been in the anomalous position then, as it is now, of claiming that the ordinance amounts to a "taking" without due process and is confiscatory as to land in which it has no present interest which is subject to confiscation.

But aside from the discretionary question of whether alternative remedies were available, the relator in a mandamus proceeding also has the burden of showing a clear legal right to the relief sought. *State, ex rel. Hauck,* v. *Bachrack,* 168 Ohio St., 268; *State, ex rel. Michaels,* v. *Morse,* 165 Ohio St., 599.

After reviewing the record before us, we are unable to conclude that the relator has sustained that burden. The strong presumption of validity which applies to legislative acts in general applies with equal force to zoning ordinances. *Curtiss* v. *City of Cleveland, supra* (170 Ohio St., 127); *State, ex rel. Bugden Development Co.,* v. *Kiefaber, supra* (113 Ohio App., 523). If the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. *Cleveland Trust Co.* v. *Village of Brooklyn,* 92 Ohio App., 351, appeal dismissed, 158 Ohio St., 258.

Particularly applicable to the evidence in the present case is the following passage from 8 McQuillin on Municipal Corporations, 98, Section 25.44, as quoted from the *Village of Brooklyn case* at page 362:

"The general rule is that hardship, limitation of use or diminution or increase of value of private property does not in

itself render a zoning measure unconstitutional or invalid. Indeed, a zoning ordinance is not necessarily invalid although it is harsh and seriously depreciates the value of property involved. * * * Nor is the test of the validity of a zoning measure its financial advantage or disadvantage to the owner arising from the measure or its enforcement. * * *

"* * * *

"Mere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance. Similarly, the fact that property is more valuable for an excluded use does not in itself void a zoning restriction. Consistently with these principles, a zoning ordinance may classify property for residential purposes although it can more profitably or beneficially be used for commercial purposes, * * * or for industrial purposes. * * *"

Here the particular location of the tract of land in question is not unique. It compares favorably with other land in the same area, which is also zoned residential although susceptible of a higher and better use. As stated by this court in the *Bugden case, supra* (113 Ohio App., 523), "it is inevitable that, unfortunately, many zoning ordinances affect the potential profit of someone." The sixteen-acre tract in question faces expensive homes to the east and south, which are clearly in residential areas, and the relator's contention that this parcel is unsuitable for homes because of its proximity to the excavated portion of the thirty-seven acre tract is neutralized substantially by evidence that homes valued as high as $40,000 have been constructed immediately west of the same excavation. Furthermore, there is no other business use of property in the vicinity.

The evidence upon the economic feasibility of the use of the land for residential purposes is in sharp conflict, and the evidence upon the relation of the present zoning ordinance to public health, safety and general welfare is at least debatable. It also appears clear from the evidence that the tract has substantial value to its owner under the present non-conforming use.

The record, therefore, does not offer sufficient justification for invalidating the ordinance as to this tract of land, and, since

the relator has failed to show a clear legal right to the relief sought, the writ must be denied.

*Writ denied.*

CRAWFORD, P. J., and SHERER, J., concur.