REED ET AL., APPELLANTS, *v.*
ROOTSTOWN TOWNSHIP BOARD OF ZONING APPEALS ET AL., APPELLEES.

[Cite as Reed *v.* Rootstown Twp. Bd. of Zoning Appeals (1984),
9 Ohio St. 3d 54.]

(No. 83-177—Decided January 25, 1984.)

*Messrs. Enlow & Stephens* and *Mr. Chester A. Enlow,* for appellants.

*Mr. John J. Plough,* prosecuting attorney, and *Mr. Louis R. Myers,* for appellees.

*Per Curiam.* R.C. 519.14(B) empowers a township board of zoning appeals to grant variances. The section states as follows:

"The township board of zoning appeals may: * * * (B) Authorize, upon appeal, in specific cases, such variance from the terms of the zoning resolution as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the resolution will result in unnecessary hardship, and so that the spirit of the resolution shall be observed and substantial justice done."

The question presented is whether the board's denial of appellants' request for a variance amounts to an abuse of discretion and the unconstitutional confiscation of their property.

Appellants challenge the board's decision in two respects. First, they contend that the board's enforcement of Sections 203-5(A)[1] and 203-7(A)[2] of the township zoning resolution, which require frontage on a public road meeting minimum standards, is arbitrary in this instance. Appellants point out that the private road in question has been used for forty years and several other single family homes are located on the private road, some of which were built after adoption of the zoning resolution. Even if we assume that this contention is well-taken, however, appellants' second contention remains problematic.

This second contention concerns the applicability of the O-C zoning, which requires a five acre minimum lot size pursuant to Section 301-3(A) of the township zoning resolution, to the subject property. Appellants argue that because their lot overlaps two districts (R-1 and O-C), the less restrictive R-1 requirements should obtain, notwithstanding that eighty to ninety percent of the lot falls within the O-C district and that any building would necessarily be located in the O-C portion of the lot. The appellants do not explain why they authorized the creation of a 2.834 acre lot as opposed to the five acre minimum required for O-C, other than to state that they did not learn until after the first appeal was taken to the trial court that the major portion of the lot fell in the O-C district. Moreover, the appellants do not discuss why they cannot now develop the subject property in conformity with the applicable minimum lot size. Thus the board seemed to have been correct in asserting that "[a]ppellant has created his own hardship by arbitrarily in-

---

[1] Section 203-5(A) of the township zoning resolution provides as follows:

"Every principal building shall be located on a lot of record having frontage on a public or private street built to standards required of dedicated streets in the County."

[2] Section 203-7(A) provides in pertinent part as follows:

"All residential streets and roads, both public and private, shall conform to all standards of a dedicated residential street as required by the Portage County Subdivision Regulations * * *."

structing his surveyor to draw lines that do not comply with the requirements contained in the Rootstown Zoning Resolution." Cf. *Town Center Development Co.* v. *Cleveland* (1982), 69 Ohio St. 2d 640, 645 [23 O.O.3d 524] (William B. Brown, J., concurring) (no relief required for self-created hardship).

For this reason, the instant case is distinguishable from *Negin* v. *Bd. of Bldg. & Zoning Appeals* (1981), 69 Ohio St. 2d 492 [23 O.O.3d 524], which involved a substandard-sized lot. In *Negin,* a plurality of this court determined at page 496 that the "net effect" of the board's denial of a variance was that the property owner was " 'totally restricted' in the use of his property in violation of constitutional guarantees." In the case at bar appellants were not totally restricted in the use of their property. To the contrary, any hardship here was of appellants' own making.

Appellants also would rely on the amended stipulation of facts, paragraphs H and K of which state, respectively, that "[t]he Portage County Health Department has, after testing, approved the lot in question for a septic system and building" and "[t]he lands to the southeast of the lot which is the subject of this action, are swampy and marshy, but this lot is well drained and suitable for building," in further support for their requested variance. The board contends, however, "that the Portage County Health Department has issued a septic permit and that a portion of this particular lot is on higher ground does not alter the swampy nature of the area or the reasons for zoning this particular district Open Space Conservation."

A review of Section 301-1 of the zoning resolution, which sets forth the purposes of the O-C district, indicates that the O-C district is intended to serve several ends. Section 301-1 states as follows:

"This district is established for the following purposes: (1) to preserve and protect the values of distinctive geologic, topographic, botanic, historic, or scenic areas; (2) to protect the ecological balance of an area; (3) to conserve natural resources, such as river valley, and tracts of forest land; and (4) to reduce the problems created by intensive development of areas having excessively high water tables, or which are subject to flooding, or which are topographically unsuited for urban type uses."

These purposes, as enumerated in Section 301-1, are a reasonable and legitimate exercise of the police power, *Euclid* v. *Ambler Realty* (1926), 272 U.S. 365, and the board's exercise of its discretion in this instance cannot be characterized as "arbitrary, confiscatory or unreasonable." *Willott* v. *Beachwood* (1964) 175 Ohio St. 557 [26 O.O.2d 249].

For the reasons hereinbefore stated, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., dissents.

C. BROWN and J. P. CELEBREZZE, JJ., dissent separately.

CLIFFORD F. BROWN, J., dissenting. The *per curiam* opinion states that the question presented for this court to resolve is whether the board's denial of apppellants' request for a variance amounts to an abuse of discretion and the unconstitutional confiscation of their property. That is not the legal issue whatsoever.

This case presents a legal issue concerning the scope of judicial review by a court of common pleas in an R.C. Chapter 2506 administrative appeal. The legal issue is: Where the court of common pleas has competent, substantial, factual support within its proper scope of judicial review for its decision reversing a board of zoning appeals which denied a variance to landowners does the scope of judicial review by a court of appeals permit it to substitute its judgment for that of the court of common pleas by reversing that court? The court of appeals may not do so in this case for the following reasons.

In considering this legal issue the following facts are relevant. Although the Rootstown zoning resolution was enacted in 1971, three single-family residences fronted on the private access road known as Lansinger Road and two of these residences are farther away from the public road known as Old Forge Road than is the proposed lot for which plaintiffs are seeking a variance. Two of these three single-family residence lots are at least partly in the Open Conservation District ("O-C").

These three homeowners all use the private road for ingress and egress. One of these three residences was built after the 1971 enactment of the zoning resolution. The amended stipulations of fact filed by the parties in the court of common pleas as authorized by R.C. 2506.03 for a *de novo* trial proceeding, further state that the Portage County Health Department has, after testing, approved plaintiffs' proposed lot for a septic system and building; that the proposed use of the property is for a single family dwelling; that the lands to the southeast of the plaintiffs' proposed lot are swampy and marshy, but that the proposed lot is well drained and suitable for building; that the appeal is submitted to the court of common pleas, *inter alia*, upon the stipulations of fact, exhibits, and transcripts of the public hearings; and that the parties reserve the right to adduce additional evidence as authorized by R.C. 2506.03.[3]

---

[3] That the administrative appeal proceedings in the court of common pleas under R.C. 2506.03 are *de novo* trial proceedings, and that the decision of the board appealed is binding on the court of common pleas only to the extent provided in R.C. 2506.04, are clear from relevant portions of R.C. 2506.03 which read as follows:

"The hearing of such appeal shall proceed as in the trial of a civil action but the court shall be confined to the transcript as filed pursuant to Section 2506.02 of the Revised Code unless it appears on the face of said transcript or by affidavit filed by the appellant that:

The foregoing record before the court of common pleas supported its specific findings that "three other single family residences presently exist along the private road. It is therefore clear that the character of the neighborhood would not be altered or injured, and that substantial justice will be served by granting a variance." Upon this proper predicate, the trial court correctly found that "the decision of the Board of Zoning Appeals is unreasonable and arbitrary and that it is reversed," and in its judgment entry also correctly stated that denial of the variance is "an unnecessary hardship."

The foregoing undisputed facts support the court of common pleas' determination in its opinion that "the character of the neighborhood would not be altered or injured, and that substantial justice will be served by granting the variance." See 58 Ohio Jurisprudence 2d 612-613, Zoning, Section 157. This court of common pleas determination also harmonizes with sound judicial precedent of this court in *State, ex rel. Killeen Realty,* v. *East Cleveland* (1959), 169 Ohio St. 375 [8 O.O.2d 409], which holds in paragraph three of the syllabus:

"* * * Where it is shown that a proposed use of the land in question is in harmony with the needs and nature of the community and where no economically feasible use of such land may be made under the existing zone designation, it is an abuse of discretion on the part of the municipality's officials possessing the discretionary power to do so to refuse to grant a variance."

The court of common pleas decision is also in harmony with *In re Appeal of McDonald* (1963), 119 Ohio App. 15 [26 O.O.2d 100], which holds that it is unlawful to "restrict the use of the [involved] property without a concomitant benefit to the public." *Id.* at 18. *Killeen* expresses the purpose of zoning, preserving the character of the neighborhood, as explained in the landmark United States Supreme Court decision of *Village of Euclid* v. *Ambler Realty* (1926), 272 U.S. 365.

In the present case restricting plaintiffs to a minimum lot size of five

---

"(A) The transcript does not contain a report of all evidence submitted or proffered by the appellant.

"(B) The appellant was not permitted to appear and be heard in person or by his attorney in opposition to the order appealed from:
"* * *
"(2) To offer and examine witnesses and present evidence in support thereof;
"* * *
"(E) * * * [T]he court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. * * *"

In this case the parties filed amended stipulations of fact in the court of common pleas. This constituted additional evidence authorized by R.C. 2506.03.

R.C. 2506.04 dovetails with the provisions of R.C. 2506.03 by permitting the court of common pleas as a trial factfinder to determine that the board's decision is unreasonable. This is more fully discussed *infra*.

acres creates no "concomitant benefit to the public" as that language is used in *McDonald, supra.*

The court of common pleas in reversing the board of zoning appeals found that the board's decision was "unreasonable" under R.C. Chapter 2506, providing for administrative appeals. As the factfinding tribunal in a *de novo* trial proceeding authorized by R.C. 2506.03, that court had the legal power and duty to so find on the basis of the language of R.C. 2506.04, relating to the finding and order of the court, which provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, *unreasonable,* or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate or modify the order, adjudication or decision, or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on *questions of law* pursuant to sections 2505.01 to 2505.45, inclusive, of the Revised Code." (Emphasis added.)

The first sentence of this statute gives *solely* to the court of common pleas the judicial power to adjudicate that the administrative order of the board was "unreasonable." This is consistent with a trial factfinder being empowered to weigh all the facts in a *de novo* trial proceeding. It does not give the court of appeals that *de novo* trial factfinding power whatsoever. To the contrary, the last sentence of R.C. 2506.04 gives the court of appeals reviewing authority of the common pleas court decision *only* on "questions of law."

In reviewing the court of common pleas judgment, the court of appeals, limited to a review of that judgment *only* on questions of law, can reverse only if that judgment is against the manifest weight of the evidence. The court of common pleas judgment here was not against the manifest weight of the evidence; nor did the court of appeals so find. The scope of the judicial power and function of the courts of common pleas on administrative appeals, as authorized under R.C. Chapter 2506, can be found in *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202 [12 O.O.3d 198], and *Cincinnati Bell, Inc.* v. *Glendale* (1975), 42 Ohio St. 2d 368 [71 O.O.2d 331].

*Dudukovich, supra,* in a *per curiam* opinion, at pages 206-208, states:

"The issue is thus narrowed to a question of whether the Court of Common Pleas properly conceived of its scope of review under R.C. 2506.04 as including a weighing of the evidence. In one of the few instances this court has had to consider the scope of review provided for by R.C. Chapter 2506, we stated that, '* * * [a]lthough a hearing before the Court of Common Pleas pursuant to R.C. 2506.01 is not *de novo,* it often in fact resembles a *de novo* proceeding. R.C. 2506.03 specifically provides that an appeal pursuant to R.C. 2506.01 "shall proceed as in the trial of a civil action," and makes liberal provision for the introduction of new or additional evidence. R.C. 2506.04 requires the court to examine the "substantial, reliable and probative evidence

on the whole record,'' which in turn necessitates both factual and legal determinations. Clearly, the function of a Court of Common Pleas in a R.C. Chapter 2506 appeal differs substantially from that of appellate courts in other contexts.' *Cincinnati Bell* v. *Glendale* (1975), 42 Ohio St. 2d 368, 370 [71 O.O.2d 331]. * * *

"In determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by the Court of Common Pleas, both this court and the Court of Appeals have a limited function. R.C. 2506.04 provides, in part: 'The judgment of the court [of common pleas] may be appealed by any party on questions of law pursuant to sections 2505.01 to 2505.45, inclusive, of the Revised Code.'

"Referring to R.C. 2505.31, we find that '[i]n a civil case or proceeding * * * the supreme court need not determine as to the weight of the evidence.' Thus, our inquiry is limited to a determination of whether, as a matter of law, we can say that there did exist a preponderance of reliable, probative and substantial evidence to support appellant's decision to dismiss appellee. If so, we should reverse the judgment of the Court of Appeals which affirmed the Court of Common Pleas; otherwise, we must affirm the Court of Appeals."

*Cincinnati Bell, Inc. supra,* another *per curiam* opinion, after stating that the function of a court of common pleas in an R.C. Chapter 2506 appeal differs substantially from that of appellate courts, as set forth above in the first paragraph excerpted from *Dudukovich,* at pages 370-371, determined as follows:

"This distinction is reflected in the test which Courts of Common Pleas apply when hearing appeals pursuant to R.C. Chapter 2506. That test is not, as appellant urges, whether any legal justification exists for a holding of the Board of Zoning Appeals, but rather whether the ordinance, in proscribing a landowner's proposed use of his land, bears a reasonable relationship to the public health, safety, welfare, or morals. *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365; *State, ex rel. City Ice & Fuel Co.,* v. *Stegner* (1929), 120 Ohio St. 418; *Curtiss* v. *Cleveland* (1957), 166 Ohio St. 509 [3 O.O.2d 1]; *Willott* v. *Beachwood* (1964), 175 Ohio St. 557 [26 O.O.2d 249]; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23 [67 O.O.2d 38]; *Forest City Enterprises* v. *Eastlake* (1975), 41 Ohio St. 2d 187 [70 O.O.2d 384]. R.C. 2506.04 specifically adopts such a test providing that '[t]he court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of * * * evidence * * *.' "

In short, the function of the court of common pleas as factfinder under R.C. Chapter 2506 differs from the scope of review of the court of appeals as a reviewer of "questions of law."

Ironically, the court of appeals in the case here recognized in its opinion this scope of review of the court of common pleas decision under R.C. Chapter 2506, by correctly stating:

"A variance from a zoning requirement may be granted only upon a

demonstration that a literal application of the regulation on a parcel of property will result in an unnecessary hardship, and that the variance would serve the spirit of the zoning law. *Hulligan* v. *Board of Zoning Appeals* (1978), 59 Ohio App. 2d 105 [13 O.O.3d 162]; 10 Ohio Jurisprudence 3d, Buildings, Zoning and Land Controls, Section 282; R.C. 519.14.

"The granting or denial of a variance is within the discretion of the Board of Zoning Appeals and the *standard of review on appeal to the common pleas court* is whether the board's discretion was *reasonable. Mentor Lagoons* v. *Board of Zoning Appeals* (1958), 168 Ohio St. 113 [5 O.O.2d 372]; *Hulligan* v. *Board of Zoning Appeals, supra,* * * *." (Emphasis added.)

Under this stated scope of review, the court of common pleas properly performed its function of determining that the board's decision was unreasonable. The court of appeals presented no legal rule, precedent or fact which authorized that court to disturb the decision of the court of common pleas, but just blandly, without legal or factual support, stated in its opinion:

"We conclude the Board of Zoning Appeals did not abuse its discretion in denying appellee's request for the variances. The decision of the board was reasonable."

The above conclusion of the court of appeals is a factfinding function of the court of common pleas only, and usurped the court of common pleas' function. The court of appeals' scope of review did not permit it to consider whether the board's decision was reasonable and not an abuse of discretion. That was for the court of common pleas alone to decide.

In addition, certain statements of the facts by the court of appeals are contrary to the amended stipulations of fact, namely, that the five acre requirement in the Open Space and Conservation District is justified by the fact the area is swampy. Paragraph K of the amended stipulations, states the plaintiffs' lot is "well drained and suitable for building." Paragraph H states that: the health department "approved the lot in question for a septic system and building."

The court of appeals also stated that the lot size is justified to ensure each building may be reached by fire, police and other agencies. This is contrary to the amended stipulations of fact, paragraphs C and F, that the private access road is at least forty feet wide, which homeowners use continuously for ingress and egress to Old Forge Road. These misstated facts may partially account for the reason that the court of appeals erred.

In summary, to continue the fine analysis of the scope of review of the court of common pleas for R.C. Chapter 2506 administrative appeals enunciated by this court of *Dudukovich* and *Cincinnati Bell, Inc., supra,* we should hold here that the court of common pleas according to R.C. 2506.03 and 2506.04 is a factfinding tribunal with the equivalent of *de novo* trial powers, and may substitute its factfinding judgment for that of the zoning board of appeals, thus reversing an administrative decision as "unreasonable," but that the court of appeals does not have such *de novo* factfinding power and

may not substitute its judgment for that of the zoning board or of the court of common pleas.

In view of the foregoing analysis the *per curiam* opinion in this case discusses facts and issues totally irrelevant and unnecessary for a proper decision in this case. It discusses appellants' contention that the board's enforcement of Sections 203-5(A) and 203-7(A) of the zoning resolution, concerning frontage requirements, is arbitrary. This court does not even reach a definite conclusion about that contention, leaving it unresolved with this phraseology:

"Even if we assume that this contention is well-taken * * *, appellants' second contention remains problematic."

Next, this court irrelevantly discusses applicability of O-C zoning and observes that appellants do not explain why they authorized creation of a 2.834 acre lot as opposed to the five acre minimum size required for an O-C district. Any explanation is immaterial. The reasons for creating a building lot of any size is obvious — to build on it or to sell it. Five acres is not a usual lot size. It is the equivalent of a small farm. Also irrelevant is the observation that appellants created their own hardship and is a basis for denying them a variance. The discussion concerning the purpose of Section 301-1, O-C district, agrees with the purpose of the proposed lot, in view of the stipulated facts concerning septic tank approval and full compliance with health department regulations.

The entire discussion in the *per curiam* opinion establishes no clear legal principles and gives the erroneous impression that this court and the court of appeals have the power to weigh the evidence and to substitute their judgment for that of the court of common pleas. That is contrary to the purpose, spirit and letter of R.C. Chapter 2506 appeals. It is also contrary to R.C. 2505.31 which establishes a practice of the Supreme Court to refuse to weigh the evidence. *State, ex rel. Pomeroy,* v. *Webber* (1965), 2 Ohio St. 2d 84 [31 O.O.2d 62].

The *per curiam* opinion and holding of this court today in this case *sub silentio* overrules and conflicts with *Dudukovich* and *Cincinnati Bell, Inc., supra.* At least two of the present Justices joined the *per curiam* opinion in both such cases, a position inconsistent with the *per curiam* opinion in the decision reached today. Justice Holmes who was also a member of this court in *Dudukovich* is consistent with his minority dissent in the present case. This reveals the state of confusion, resembling the Tower of Babel, in which the law of R.C. Chapter 2506 administrative appeals is now immersed. The Bench and Bar will flounder in attempting to bring and resolve R.C. Chapter 2506 proceedings and appeals.

The judgment of the court of appeals should be reversed and I accordingly dissent.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.