KETCHEL ET AL., APPELLANTS, *v.* BAINBRIDGE TOWNSHIP ET AL., APPELLEES.

[Cite as Ketchel *v.* Bainbridge Twp. (1990), 52 Ohio St. 3d 239.]

(No. 89-693—Submitted April 4, 1990—Decided July 18, 1990.)

*Edwin J. Ketchel, Thomas & Boles* and *Stephen G. Thomas,* for appellants.

*Forrest W. Burt,* assistant prosecuting attorney, for appellees.

ALICE ROBIE RESNICK, J. This case tests both the township's power to zone and the validity of the zoning resolution it adopted. For the reasons which follow, we hold the zoning resolution valid as applied to the property in question.

## I
### The Power of Bainbridge Township to Zone

Because they have no inherent or constitutional police power, townships have only the zoning power delegated to them by the General Assembly. *Yorkavitz* v. *Bd. of Trustees of Columbia Twp.* (1957), 166 Ohio St. 349, 351, 2 O.O. 2d 255, 256, 142 N.E. 2d 655, 656. The General Assembly has delegated this power to township trustees through R.C. 519.02, which provides:

"For the purpose of promoting the public health, safety, and morals, the board of township trustees may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures, including tents, cabins, and trailer coaches, percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures including tents, cabins, and trailer coaches, and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of such township, and for such purposes may divide all or any part of the unincorporated territory of the township into districts or zones of such number, shape, and area as the board determines. All such regulations shall be uniform for each class or kind of building or other structure or use throughout any district or zone, but the regulations in one district or zone may differ from those in other districts or zones."

### A
#### Minimum Lot Sizes

Appellants initially contend that the Bainbridge Township Zoning Resolution is invalid because R.C. 519.02 gives township trustees no authority to set minimum lot sizes. They point to R.C. 711.05, one of the

statutes governing the recording of subdivision plats, which provides in pertinent part:

"The board may adopt general rules governing plats and subdivisions of land * * * for the avoidance of future congestion of population detrimental to the public health, safety, or welfare but shall not impose a greater minimum lot size than forty-eight hundred square feet."

Appellants assert that this statute gives exclusive authority to set minimum lot sizes to the county commissioners. They further argue that, by virtue of this statute and R.C. 711.09 (which governs villages and cities and contains similar language), *no* local zoning authority anywhere in Ohio may set a minimum lot size greater than 4,800 square feet, which is a little more than one tenth of an acre. We do not agree.

R.C. 519.02 does not contain the specific words "lot size." However, R.C. 519.02 does empower the board of township trustees to regulate population density. The establishment of minimum lot sizes is a "commonly approved technique" for achieving this objective. *State, ex rel. Grant,* v. *Kiefaber* (1960), 114 Ohio App. 279, 292, 19 O.O. 2d 207, 215, 181 N.E. 2d 905, 915, affirmed (1960), 171 Ohio St. 326, 14 O.O. 2d 3, 170 N.E. 2d 848.

Further, R.C. 519.02 expressly grants the power to regulate the "size of * * * buildings and other structures, * * * percentages of lot areas which may be occupied, set back building lines, [and] sizes of yards, courts, and other open spaces * * *." Even if we were to hold that the statute does not empower the township trustees to set a minimum lot size, the township trustees could follow the statute literally to create a *de facto* minimum lot size requirement by setting a minimum building size, a minimum yard size, and a maximum percentage of occupancy. The General Assembly could not have intended to withhold the power to regulate lot size directly while granting the power to do so indirectly.

Finally, we reject the argument that R.C. 711.05 grants county commissioners the exclusive authority to set lot sizes. The statutes in R.C. Chapter 711 govern the recording of plats. Plats are recorded, not as a means of regulating land use, but as a part of the process of subdividing and conveying land. See, generally, 35 Ohio Jurisprudence 3d (1982), Dedication, Section 46. The platting process is initiated by the actions of landowners and not by local government. The platting statutes are not a substitute for zoning.

Accordingly, we adopt the position long held by Ohio legal authorities, see *Grant, supra; State, ex rel. Bugden Development Co.,* v. *Kiefaber* (1960), 113 Ohio App. 523, 18 O.O. 2d 169, 179 N.E. 2d 360; 1970 Ohio Atty. Gen. Ops. No. 70-074; see, also, *Reed* v. *Rootstown Twp. Bd. of Zoning Appeals* (1984), 9 Ohio St. 3d 54, 9 OBR 260, 458 N.E. 2d 840 (approving five-acre minimum lot size imposed by township), and hold that township trustees may set minimum lot sizes in the exercise of the zoning authority conferred by R.C. 519.02.

## B

### *Conservation of Water Resources*

The Bainbridge Township Zoning Resolution states that the purpose of the R-3A zoning classification is to "provide for the development of lands * * * in accordance with the ability of such lands to support development without central water supply and/or central sewerage disposal facilities, to prevent pollution of such lands and the underlying aquifers by excessive

development, and to protect the aquifer recharge areas * * *." Appellants claim that the protection of groundwater resources is not a legitimate objective of zoning.

Relying on *Cline* v. *American Aggregates Corp.* (1984), 15 Ohio St. 3d 384, 15 OBR 501, 474 N.E. 2d 324, appellants contend that landowners have an absolute right to use groundwater without concern for the consequences to neighboring landowners. Because the stated purpose of the R-3A zoning classification is to protect the underlying aquifers, appellants argue that a portion of their lands is essentially being dedicated to replenishing their neighbors' water supply while their own right to use groundwater is unconstitutionally restricted.

We find this position untenable. The purpose of zoning is, in part, to protect public health and safety. *E.g.,* R.C. 519.02. An adequate supply of safe water for domestic use is vital to public health. Bainbridge Township has a legitimate interest in assuring that its residents are not faced with a shortage of pollution-free water. This is a proper objective of zoning.

Nor does the consideration of water resources effect an unconstitutional restriction on appellant's riparian rights. Under ancient Ohio law, as stated in *Frazier* v. *Brown* (1861), 12 Ohio St. 294, a landowner was not liable for harm resulting from the landowner's use of groundwater. However, *Cline, supra,* overruled *Frazier,* adopting a rule which imposes liability on a landowner whose use of groundwater unreasonably interferes with the water rights of another. *Cline, supra,* at syllabus. Thus, *Cline* supports the view that groundwater is a resource which must be conserved and protected. Accordingly, we hold that a local zoning authority may consider the conservation of underground water resources when enacting zoning regulations.

Finally, appellants seem to argue that the Bainbridge building and lot size restrictions create a sort of mandatory public easement for rainwater to . soak into their property and replenish the aquifer. This is not so. While appellants are prohibited from completely covering their property with buildings, the minimum lot size, minimum yard size and maximum percentage of occupancy requirements of which appellants complain do not prevent them from using all of their land for residential purposes. No taking for public purpose has occurred.

## II
### *Validity of the Zoning Resolution as Applied to the Subject Property*

As with all legislative enactments, zoning regulations are presumptively constitutional. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 95, 20 O.O. 3d 88, 89, 420 N.E. 2d 103, 105. In order to invalidate a zoning regulation on constitutional grounds, the parties attacking it must demonstrate, beyond fair debate, that the zoning classification denies them the economically viable use of their land without substantially advancing a legitimate interest in the health, safety, or welfare of the community. *Karches* v. *Cincinnati* (1988), 38 Ohio St. 3d 12, 19, 526 N.E. 2d 1350, 1357; *Mayfield-Dorsh, Inc.* v. *South Euclid* (1981), 68 Ohio St. 2d 156, 22 O.O. 3d 388, 429 N.E. 2d 159; *Brown, supra; Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36, 68 O.O. 2d 21, 313 N.E. 2d 820; see, also, *Penn Central Transp. Co.* v. *New York City* (1978), 438 U.S. 104; *Goldblatt* v. *Hempstead* (1962), 369 U.S. 590; *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365. The fact that the land has been rendered less valuable by zoning, taken alone, is insufficient; it

must be shown that "the permitted uses are not economically feasible, or the regulation permits only uses which are highly improbable or practically impossible under the circumstances." *Valley Auto Lease of Chagrin Falls, Inc.* v. *Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St. 3d 184, 186, 527 N.E. 2d 825, 827.

Appellants attack the Bainbridge Township Zoning Resolution on the ground that the use restrictions and the three-acre minimum lot size are not rationally related to a legitimate public interest and deprive them of any economically viable use.

### A
### *Residential Use Classification*

The R-3A zoning classification restricts the use of the subject property to agriculture, single-family dwellings, churches, schools, public recreation, governmental buildings, and cemeteries. Appellants claim that this restriction is unconstitutional because the subject property is surrounded by business and industrial uses, fronts on busy highways, and is crossed by power lines, thus rendering it unsuitable for residential use.

The record does not support this characterization of the subject property as a residential "island" surrounded by a "sea" of incompatible commercial and industrial uses. While there is commercial and industrial development along Washington Street (in areas zoned for those uses), most of the nearby area in Bainbridge Township is zoned R-3A and used for farming or single-family residences. The area of the village of South Russell adjacent to the property is likewise used for single-family residences. Indeed, the township zoning map (Appendix A) reveals that the commercial and industrial areas which appellants claim surround the property are themselves surrounded by property zoned for residential use. The subject property may be more valuable if used for commercial and industrial purposes. But appellants have failed to show: (1) that the character of the surrounding area is such that a restriction to residential uses renders the development of their property economically infeasible, or (2) that the reasonableness of a residential use restriction is not fairly debatable. See *Nectow* v. *Cambridge* (1928), 277 U.S. 183, 187-188.

### B
### *Groundwater Supplies*

Appellants contend that available groundwater resources are adequate to support the needs of the Bainwood Center project; therefore, a restriction to single-family use is not rationally related to the township's concern for preserving the underlying aquifer.

The record contains much evidence on the question of groundwater supplies. A 1978 groundwater resource survey based on well drillers' logs indicates that the subject property has water "[s]uitable for central supplies for small to moderate-sized subdivision development." Appellants presented testimony that Lake Lucerne, a nearby subdivision consisting of single-family residences on lots as small as a third of an acre, has an adequate supply of water from ten wells owned by the Lake Lucerne Water Company. However, appellees elicited testimony from the same witness that Lake Lucerne's wells were producing at only twenty-five percent of the capacity indicated by the well drillers' logs. The engineer who prepared the cost estimates for the Bainwood Center project did so on the assumption that the development would obtain its water from the city of Chagrin Falls; this raises the inference that the available groundwater would not be adequate.

We need not determine whose

characterization of the water supply is more accurate. The evidence is sufficient to support a township decision that further high-density development in northern Bainbridge Township would strain the available water supply. Appellants have failed to prove "beyond fair debate" that a restriction on use of the subject property to low-density residential use does not advance a legitimate objective of zoning.

## C
### Three-Acre Minimum Lot Size

Damon A. Braun, a licensed engineer, prepared a "conceptual drawing" ("the Braun plan") showing the subject property divided into seventy-one three-acre residential lots in accordance with the requirements of the R-3A zoning classification. Braun also prepared a summary of engineering costs which would be incurred in developing the land according to this plan.

Wesley E. Baker, an independent real estate appraiser, prepared an estimate of the value of the property. He estimated the net fair market value of the property, if developed according to the Braun plan, at $61,000 if the lots sold within five years, and a negative $6,000 if they sold in six years. By contrast, the estimated net fair market value of the land if developed pursuant to the Bainwood Center proposal was $1,333,000.

The R-3A zoning classification restricts the use of the property to agriculture, single-family dwellings, churches, schools, public recreation, governmental buildings, and cemeter-

ies. Appellants demonstrated that use of the property for single-family residences at the maximum possible density permitted under the zoning at issue (after allowing for access roads) was not economically viable. The trial court specifically found that subdivision of the property "would not be economically feasible" under the three-acre minimum zoning restriction.[3] Appellants presented no evidence of economic infeasibility if the land were used for churches, schools, cemeteries, or public facilities. However, appellants did present some testimony tending to show that use of the property for farming is not economically viable.[4]

Appellees and the courts below concluded that appellants did not meet their burden of proof because they did not show that *all* possible uses were economically infeasible. We agree. A party challenging a zoning ordinance has, at all stages of the proceedings, the burden of showing the unconstitutionality or unreasonableness of the ordinance. See *Mayfield-Dorsh, Inc.* v. *South Euclid, supra,* at 157, 22 O.O. 3d at 389, 429 N.E. 2d at 161. While the record here contains some evidence that appellants would be unable to economically use their property for single-home development, the record also shows that high-density development in northern Bainbridge Township might strain the available water supply. Thus appellants have not shown beyond fair debate that the minimum lot size requirement is unconstitutional, unreasonable and not substantially related to the public health or safety and have not "unambiguously

---

[3] The trial court made this finding of fact:

"6. Plaintiff[-appellant]s' real property could be subdivided into 71 lots if Plaintiffs were to meet all applicable zining [sic] and Geauga County Planning Commission

regulations. Such a subdivision would not be economically feasible."

[4] Appellant Eugene Muggleton testified that he purchased seventeen acres in 1972 for $25,500. This property was rented out for farming for $85 per year at the time of trial.

demonstrate[d], with a massive amount of evidence, the invalidity of a zoning classification mandat[ing] meaningful judicial review." *Mayfield-Dorsh, Inc., supra,* at 159, 22 O.O. 2d at 390, 429 N.E. 2d at 162.

A reviewing court must be very reluctant to substitute its judgment for that of the body responsible for applying zoning ordinances.

"The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, municipal revenue to be produced for the city, expense of the improvement, *land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations,* and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable." (Emphasis added.) *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, 26 O.O. 2d 249, 251, 197 N.E. 2d 201, 204.

There is sufficient evidence to show that the three-acre minimum lot size is necessary in order to protect public health and safety in this section of Bainbridge Township. Accordingly, we will not substitute our judgment for that of the Bainbridge Township Trustees, and thus hold that the minimum lot size requirement of the R-3A zoning classification is valid as applied to the subject property.

### D
### Conclusion

The record supports a township decision that the use of the property should be restricted to agriculture, single-family dwellings, churches, schools, public recreation, governmental buildings, and cemeteries, and that the density of population on the property should be limited to conserve the water supply. The record also supports a determination that a three-acre lot requirement advances a legitimate interest in the health, safety, or welfare of the community.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY and DOUGLAS, JJ., concur.

HOLMES, WRIGHT and H. BROWN, JJ., concur in part and dissent in part.

H. BROWN, J., concurring in part and dissenting in part. I concur in the syllabus and in Parts I, II(A), and II(B) of the majority opinion. Because I believe that appellants have proven that the three-acre minimum lot size deprives them of the economically viable use of their land, I respectfully dissent from Part II(C) and the judgment.

Appellants presented unrebutted expert testimony that development of the subject property for single-family residence use *at the maximum allowable density* was not economically viable. The trial court made a specific factual finding in favor of appellants on this issue. It has not been challenged on appeal. Further, appellants

presented unrebutted testimony indicating that use of the subject property for farming was not economically viable.

On this record, the majority holds that appellants failed in their burden of proof because they presented "no evidence of economic infeasibility if the land were used for churches, schools, cemeteries, or public facilities" such as parks or government buildings. As a basis for decision, this is to substitute fantasy for reality. Highly improbable or practically impossible uses are not a valid basis for making zoning determinations. *Valley Auto Lease of Chagrin Falls, Inc.* v. *Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St. 3d 184, 186, 527 N.E. 2d 825, 827. As a matter of economic reality, the property in question is not going to be developed by appellants as a school, park, church, cemetery, or government building. Indeed, appellants have no authority to construct such structures and are left in the position of waiting for the unlikely prospect that some day a church or a governmental body *might* want their property. Because appellants are prevented from engaging in economically viable development, the practical effect of the three-acre minimum lot size is to render the subject property undevelopable.

The record reveals that two nearby subdivisions were developed on smaller lots, apparently without adverse effects on the groundwater supply. Thus, while the township is justified in restricting the density of development, the large lot size imposed by the R-3A zoning classification is not necessary. I would invalidate the three-acre minimum lot size as applied to the subject property and direct the township to rezone the property in conformity with the zoning applicable to surrounding properties.

HOLMES and WRIGHT, JJ., concur in the foregoing opinion.