W.O. BRISBEN COMPANY et al., Appellees,

v.

CITY OF MONTGOMERY, Appellant.

[Cite as *W.O. Brisben Co. v. Montgomery* (1994), 92 Ohio App.3d 812.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920436.

Decided Jan. 5, 1994.

*Keating, Muething & Klekamp* and *Joseph L. Trauth, Jr.,* for appellees.

*Cors & Bassett, Robert J. Hollingsworth, Elizabeth A. Horwitz,* and *Kevin R. Feazell,* for appellant.

MARIANNA BROWN BETTMAN, Judge.

This is the second zoning appeal involving approximately 7.764 acres of undeveloped land ("the Bowman property") owned by plaintiffs-appellees J. Julian and Edith Bowman[1] ("the Bowmans") in the city of Montgomery ("Montgomery"), located in the southeast quadrant of the I–71 and Glendale–Milford/Pfeiffer Road interchange.

The Bowman property was originally zoned "A" Residence, the strictest classification in terms of specific building requirements under the Montgomery Zoning Code. Plaintiff-appellee W.O. Brisben Company ("Brisben") has an option to purchase the Bowman property for $450,000 contingent upon a zone change. In 1987, Brisben applied for a zone change for the Bowman property, which was denied by Montgomery. Appellees then filed a declaratory judgment action requesting that the "A" Residence zoning of the Bowman property be declared unconstitutional. Shortly after the declaratory judgment action was begun, Montgomery amended its zoning ordinance to provide for a "PD (planned development) Overlay" zoning district.

In the first trial, the court found the "A" Residence zoning to be unconstitutional, further found that no residential zoning or residential development of any type would be reasonable for the Bowman property, and gave Montgomery forty-five days in which to rezone the property. The trial court also concluded that Brisben's proposed 222,300–square–foot office building was a reasonable use of the property and authorized the appellees to proceed with the office building in the event Montgomery failed to rezone the property within forty-five days. When Montgomery failed to rezone the property within forty-five days, the trial court entered an order permitting appellees to proceed with the office building. In an appeal from these orders, this court upheld the finding of the trial court that the "A" Residence zoning was unconstitutional as applied to the Bowman property, but reversed the holding that *no residential zoning would be reasonable*

---

1. James J. Bowman, son of J. Julian and Edith Bowman, is also a plaintiff-appellee in this action because he holds his parents' power of attorney.

for the property and, consequently, reversed the order allowing the appellees to proceed with the proposed office building. The matter was remanded to give Montgomery forty-five days to rezone the property in a constitutional manner. *W.O. Brisben Co. v. Montgomery* (1990), 70 Ohio App.3d 583, 591 N.E.2d 828 (*"Brisben I"*).

Following the first trial and appeal, Montgomery undertook a series of studies of the Bowman property and ultimately recommended "D–3" residence zoning for the Bowman site. A D–3 district allows both "Principal Permitted Uses" such as multi-family, apartments, and condominiums and "Conditional Permitted Uses" such as churches, synagogues, day care facilities, swim clubs, libraries, retirement villages, and the like. See Montgomery Zoning Code 151.20. On February 9, 1991, Montgomery rezoned the Bowman property to D–3 residence zoning. On August 7, 1991, the Bowmans and Brisben filed a third amended declaratory judgment action in light of the zone change.

The same trial judge who heard and decided *Brisben I* heard *Brisben II*. The parties stipulated that in addition to what was presented in *Brisben II*, the trial court should also consider the evidence which had been offered in *Brisben I* in deciding *Brisben II*.

After a second very detailed trial, the court entered judgment in favor of Brisben and the Bowmans, holding the D–3 residence zoning unconstitutional as applied to the Bowman property. The trial court again found an office building to be a reasonable use for the Bowman property and ordered Brisben to proceed with its proposed office building. The trial court enjoined the city from interfering with this use. This appeal, wherein Montgomery advances three assignments of error, followed.

■ We will dispose of Montgomery's third assignment of error first. In this assignment Montgomery maintains that the trial court erred in refusing to grant its motion for the reassignment of *Brisben II* to a different judge. According to Montgomery, when *Brisben I* was reversed on appeal, a new trial was essentially granted and, therefore, a new judge should have presided pursuant to Loc.R. 7(F) of the Hamilton County Court of Common Pleas. This argument is without merit. No new trial was ordered. The original trial had been bifurcated, with the damages issue reserved. At the time of appeal, a pretrial conference on the damages issue had been set by the trial court. It is clear from a reading of our decision in *Brisben I* that this entire matter was remanded to the trial court with specific instructions. Furthermore, the fact that Montgomery voluntarily entered into a stipulation that the court should consider all of the testimony and evidence presented in *Brisben I* in the instant case certainly flies in the face of its argument. Sound judicial economy mandated that the same judge hear both cases. This assignment of error is without merit.

In its first assignment of error, Montgomery argues that the trial court erred in finding that D–3 residential zoning was unconstitutional as applied to the Bowman property. We find that this assignment likewise has no merit.

■ In order to invalidate a zoning ordinance on constitutional grounds, the opponents of the zoning must demonstrate beyond fair debate that the zoning classification denies them the economically viable use of their land without substantially advancing a legitimate interest in the health, safety, or general welfare of the community. *Columbia Oldsmobile, Inc. v. Montgomery* (1990), 56 Ohio St.3d 60, 564 N.E.2d 455; *Ketchel v. Bainbridge Twp.* (1990), 52 Ohio St.3d 239, 557 N.E.2d 779; *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350. In *Columbia Oldsmobile, supra,* the Ohio Supreme Court set forth a two-part analysis for determining the constitutionality of a zoning ordinance. First, it must be determined whether the zoning ordinance allows the landowner, in this case the Bowmans and Brisben, an economically feasible use of the property. Next, it must be determined whether the ordinance permissibly advances a legitimate governmental interest.

Before applying this test, we will distill the lengthy testimony in the second trial to its important essence, summarizing first those witnesses who testified for Brisben.

Robert "Jay" Buchert is a home builder and developer of thirty years' experience. At the time of trial, he was on the Hamilton County Regional Planning Commission. He opined that the Bowman property was unsuited for residential use based on an analysis of lifestyles, real estate investments and risk factors, and the fact that the property was on an expressway interchange.

Daniel Staton is a partner and general manager of Duke Associates specializing in commercial developments. His testimony was limited to the subject of reviewing the feasibility of an office complex. He testified that anything smaller than 200,000 square feet was infeasible.

Judy Kincaid is a consultant who does public relations marketing and advertising for construction businesses. She did not recommend multi-family development for the Bowman property because of the noise factor of the interstate.

William Brisben has been a developer of residential units, primarily multi-family, for twenty years. He testified that in his experience it is cost-prohibitive to build residential complexes with fewer than one hundred ninety-five units. He has ruled out all types of combinations of multi-family development for the Bowman site.

Warren High works with a consulting firm in the field of environmental impact statements. He and a member of his firm did sound-level studies and analyses of the Bowman site both in 1989 and in 1992. Both studies showed that sound-level

readings, because of the expressway, exceed maximum government standards, and that therefore the site is bad for residential housing.

Philip Montanus of Towne Properties is a home builder and developer of twenty-five years' experience. He gave his opinion that the Bowman property does not have a residential use at this time because the tract is not large enough to do the things necessary to appease upscale renters and condominium owners.

James Bowman, son of the property owners, testified that he has had the Bowman property listed for sale as many as six different times and has never been presented with an offer to build any of the conditionally permitted uses.

Brisben's witnesses were challenged on cross-examination for bias because of ongoing business relationships with Brisben, for their lack of qualification as experts, for the lack of hard data supporting their opinions and for failure to perform feasibility studies of the conditionally permitted uses of the property.

Jon Bormet, City Manager of Montgomery, was called by both sides. He admitted in the plaintiffs' case that the decibel levels along I–71 exceed those allowable for residential use. Bormet stated that Montgomery has plans to construct sound-abatement walls along the interstate, but noted that the plans did not include the Bowman site. He also testified that the city of Montgomery has never rejected a proposed conditionally permitted use application in his tenure with the city. In the city's case-in-chief he testified that the Bowman site is suitable for a church, swimming pool, retirement center and/or day care, all conditionally permitted uses.

Bruce Crutcher testified on behalf of the city. He had been with Henne Development Company and, at the time of the trial, worked for Fifth Third Bank in commercial real estate. He testified that a forty-two-unit condominium development on the Bowman site was economically feasible, with a selling price of $134,000 and a potential profit of $15,000 per unit. The basis of his opinion was the desirability of the Montgomery location, coupled with the fact that there is very little available land space left for building in Montgomery. In his opinion he gave consideration to the fact that the land was so near the expressway, but it did not change his conclusion about the bottom-line profit figure. On cross-examination he admitted that he had no experience in building condominiums and had never consulted with an engineer as to how much it would actually cost to engineer the Bowman property.

Menelaos Triantafillous has a consulting firm which does land design and zone change development plans for municipalities. He prepared a site plan of the Bowman property consisting of forty-one condominiums in eight clusters for the city. On cross-examination he admitted he did not do a noise-level study, a traffic study, or an economic feasibility study.

Richard Lemker is a private architectural consultant who was hired by Montgomery to do sound-level testing for the Bowman site and another property also on I–71 north of the Bowman property. He obtained sound-level readings which exceeded federal guidelines but demonstrated that the sound levels on the other property, which had been successfully developed, also exceeded federal guidelines.

Marshall Slagle is a member of the Northern Kentucky Planning Commission and chair of the OKI traffic committee. He testified that the site had potential for multi-family use, preferably condominiums. He did not know the cost of building the condominiums or whether they were marketable.

Raymond Jackson owns his own appraisal company. He was asked by Montgomery to evaluate whether it would be financially feasible to develop the site as multi-family units. He used a "highest and best use" analysis of the site, which took into account legal permissibility, physical profitability, financial feasibility, and maximum profit. Based on those criteria, he opined that the highest and best use of the property would be either condominiums or apartments on the land. On cross-examination he admitted that he limited his highest and best use analysis to the present D–3 zoning and not the highest and best use under any zoning. While he testified about other conditionally permitted uses within the D–3 zoning, he did not perform any detailed financial feasibility studies for those uses. He admitted that none of the condominiums he used for comparison is on an expressway interchange. He admitted that the predominant use of land in the Cincinnati area at expressway interchanges is commercial or heavy commercial. He further acknowledged that economically it is more efficient to develop one hundred units or more than to develop sites with fifty units or less.

On rebuttal Brisben refuted the numbers prepared by Jackson and gave his opinion that a developer would stand to lose $1.2 million if the Bowman property were developed as rental property. None of the conditional uses was feasible, in Brisben's opinion, because of the development costs associated with the site and the negative environmental conditions, particularly noise, associated with the site.

The trial court was persuaded that the vehicular noise problems, the volume of traffic at the interchange abutting the property, and the severe topography of the Bowman property made residential uses under D–3 zoning economically infeasible.

The record reflects that the Bowman property is wooded, has a fifty-foot drop from its highest to its lowest point, and is transected by a creek and a storm-sewer pipe eight feet in diameter.

The record further reflects that at the Glendale–Milford/Pfeiffer Road interchange next to the Bowman property, in 1968, the traffic count was about 10,400

vehicles a day. At the time of the first trial of this case there were 77,900 vehicles a day at the interchange, and by the second trial 94,000 vehicles a day. The court further found, and the record reflects, that the combined traffic from I–71 and Glendale–Milford/Pfeiffer Road results in over 108,400 vehicles passing the Bowman property daily, an increase of over twenty-five percent from the first trial. All of these traffic counts are projected to increase in the future. In addition to the traffic count, the record reflects that the noise level significantly exceeds those levels recommended for residential housing by a Housing and Urban Development study. Just as the Ohio Supreme Court held it permissible in the *Columbia Oldsmobile* case for the trial court to consider traffic safety as a relevant factor to justify a particular zoning restriction, we find it a highly relevant factor in attacking the economic feasibility of a particular zoning restriction.

There is competent and credible evidence in the record to justify the trial court's finding that the existing noise levels combined with the huge traffic volume and the very difficult terrain make any possible D–3 residential use of the Bowman property economically infeasible. *Columbia Oldsmobile, supra.*

We turn next to the other uses permitted under D–3 zoning, the conditionally permitted uses. We note that there was substantially more testimony and evidence in the record devoted to the residential uses than the conditionally permitted uses allowed under D–3 zoning. D–3 zoning allows a variety of conditional uses, but the two mentioned most frequently at trial were a church and a swim club. The record reflects that the Bowman family has owned the property at issue for forty-six years, and that it has been listed for sale by six different real estate brokers. While Montgomery presented evidence of a list of uses for which the Bowman property could be developed under D–3 zoning, highly probative and supportive of the trial court's determination that the property as zoned is economically infeasible is the fact that there has never been an offer to use or buy the Bowman property for a church, synagogue, school, day care facility, golf course, private club, lodge, library, retirement home, tennis court or any other conditionally permitted use under D–3 zoning. These uses may be possible in theory, but they do not appear to be probable or practical in reality. The city manager's testimony on the subject was, at best, tentative. We find that the record demonstrates that the conditionally permitted uses of the Bowman property are highly improbable or practically impossible under the circumstances. See *Ketchel v. Bainbridge Twp., supra; Valley Auto Lease, Inc. v. Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St.3d 184, 186, 527 N.E.2d 825, 827. A zoning ordinance which deprives an owner of all uses except those which are highly improbable or practically impossible under the circumstances is impermissibly restrictive. *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 62, 564

N.E.2d at 458. We thus hold that the trial court correctly determined that Brisben and the Bowmans have demonstrated beyond fair debate that it is economically infeasible to develop the Bowman property under the conditionally permitted uses of D–3 zoning.

Having determined that the D–3 zoning ordinance leaves the Bowmans and Brisben without an economically feasible use of their property, we must continue our analysis by asking whether the property owners have been denied the economically viable use of their property without advancing Montgomery's legitimate interest in the health, safety or welfare of the community. *Ketchel, supra,* 52 Ohio St.3d at 245, 557 N.E.2d at 783; *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 65, 564 N.E.2d at 457–458.

 We are mindful that there is a presumption of validity in zoning ordinances and that the challenger has the heavy burden of overcoming this presumption. *Leslie v. Toledo* (1981), 66 Ohio St.2d 488, 489, 20 O.O.3d 406, 406–407, 423 N.E.2d 123, 124; *Brown v. Cleveland* (1981), 66 Ohio St.3d 93, 95, 20 O.O.3d 88, 88–89, 420 N.E.2d 103, 105. In this case we find that the record demonstrates that the challengers have proven, in the words of Justice Herbert Brown, in his concurrence in *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 67, 564 N.E.2d at 462, that the Montgomery zoning ordinance fails to implement "a coherent land use policy derived from a rational consideration of the needs of the community as a whole." We need look no farther on this point than the quadrant in which the Bowman property is located and particularly the parcel which once held the Montgomery Swim Club. The trial court found, and the record reflects, that the entire quadrant is primarily commercial. The character of surrounding parcels is a pertinent factor to be considered in a zoning matter. *State ex rel. Killeen Realty Co. v. E. Cleveland* (1959), 169 Ohio St. 375, 8 O.O.2d 409, 160 N.E.2d 1, paragraph four of the syllabus.

The Bowman property is in the southeast quadrant of the I–71 and Glendale–Milford/Pfeiffer Road interchange. The entire western boundary of the Bowman property abuts this exit ramp. The southwest quadrant contains a Ramada Inn, a BP service station, and the Ursuline Academy. To the northeast lies Storybrook Acres subdivision, which was constructed before I–71. In the northwest quadrant lies a Red Roof Inn in the construction site which was once the Montgomery Swim Club. In a highly significant finding the trial court found that on or around August 3, 1988, the Montgomery City Council rezoned the entire 16.5 acres of the Montgomery Swim Club, of which two of the then council members were shareholders, from "A" Residence to "O" Office without a pre-approved plan. Montgomery then sold the entire parcel to a developer for approximately three million dollars to build an office building. And yet a swim club is one of the proposed conditional uses Montgomery now urges for the

Bowman property! In the words of the Ohio Supreme Court, in *Karches, supra,* 38 Ohio St.3d at 21, 526 N.E.2d at 1359, we measure the constitutionality of the zoning " 'not by what * * * [the city] says, or by what it intends, but by what it does' " (quoting *San Diego Gas & Elec. Co. v. San Diego* [1981], 450 U.S. 621, 653, 101 S.Ct. 1287, 1304, 67 L.Ed.2d 551, 573). We believe there was an ample basis in the record to support the trial court's decision that the existing D–3 zoning as applied to the Bowman property had no substantial relation to the public health, safety and general welfare of the city of Montgomery.

In summary, boiled down to its essence, Montgomery's argument is that its witnesses were simply more credible than those of Brisben and the Bowmans. That, however, was for the trial court and not this court to determine. The trial judge in this case conducted two lengthy trials, which included voluminous exhibits and supporting material in addition to the testimony. The court entered exhaustive findings of fact and conclusions of law. We have been repeatedly cautioned not to substitute our judgment for that of the trial court in matters such as this. *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 65, 564 N.E.2d at 460; *Karches, supra,* 38 Ohio St.3d at 19, 526 N.E.2d at 1357; *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742. We hold that there was competent, credible evidence on which the trial court based its decision that all D–3 zoning uses denied the Bowmans and Brisben the economically viable use of the Bowman property beyond fair debate without advancing any legitimate interest in the health, safety, or general welfare of the community. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

 In the second assignment of error, and the last for us to consider, Montgomery argues that the trial court erred in allowing Brisben and the Bowmans to proceed with their proposed use of the property, a 222,300–square-foot office building. In short, Montgomery argues that by simply allowing Brisben to proceed with its proposed use, the property is left with no zoning restrictions. This assignment of error is overruled.

We find the case of *Union Oil Co. v. Worthington* (1980), 62 Ohio St.2d 263, 16 O.O.3d 315, 405 N.E.2d 277, combined with the very specific remand order of this court in *Brisben I,* to be dispositive of this assignment of error.

In *Union Oil* the Ohio Supreme Court specifically considered the nature of relief a court could properly order in a declaratory judgment action after a determination of the unconstitutionality of existing zoning. The court first noted that the trial court should not terminate a declaratory judgment action so as to leave property in an unzoned condition or afford the property owner complete freedom of choice. The court went on, however, to add that a court exceeds its authority in zoning matters if it orders the property rezoned to a substitute

zoning classification. To resolve this matter the court held that in a declaratory judgment action:

"[U]pon finding existing zoning unconstitutional as applied to specific real property, the trial court should give notice to the zoning authority that, within a reasonable time certain, it may, at its option, rezone the property. Further notice should be given that, if the property is not rezoned within such period of time, the court will authorize the property owner to proceed with the proposed use if, on the basis of the evidence before it, the court determines the proposed use to be reasonable. * * *

"In the event the zoning authority either fails to rezone or fails to rezone the property in a constitutionally permissible manner, the court shall examine the reasonableness of the proposed use, and, upon finding that use to be reasonable, enjoin the city from interfering with it." *Union Oil, supra,* at 267, 16 O.O.3d at 317, 405 N.E.2d at 280.

Following the mandate of *Union Oil,* after affirming the correctness of the trial court in *Brisben I* that "A" Residence zoning was unconstitutional as applied to the Bowman property, this court instructed the trial court, upon remand, to give Montgomery forty-five days in which to rezone the property in a constitutional manner. This court specifically stated that "[i]n the event that appellant fails to rezone the property, or fails to rezone it in a constitutionally permissible manner within forty-five days, the court may then enter an order permitting appellees to proceed with the proposed office building which the trial court has found to be a reasonable use for the property." *Brisben I,* 70 Ohio App.3d at 589, 591 N.E.2d at 832. This time has now come. Montgomery failed in *Brisben II* to rezone the property in a constitutionally permissible manner, and we do not believe that the city can continue to rezone this property one level at a time. The trial court has found a 222,300–square–foot office building to be a reasonable and proper use of the Bowman property and has authorized the Bowmans and Brisben to proceed with this use. We affirm the trial court's decision, which, we note, incorporates by reference a provision from the judgment in *Brisben I* that reserves to the trial court for further consideration the issue of what, if any, zoning code restrictions remain applicable to the Bowman property in view of the approval of the 222,300–square–foot office development. The trial court may now go forward with whatever further proceedings may be necessary to resolve that issue in accordance with law.

The judgment of the court of common pleas is, accordingly, affirmed.

*Judgment affirmed.*

SHANNON, P.J., and HILDEBRANDT, J., concur.